**Bruce Edwin CALLINS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 69023.**

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

On Rehearing Sept. 27, 1989.

Rehearing Denied Nov. 22, 1989.

---

Lee Ann Dauphinot, Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and David H. Montague, Gregg Pipes and C. Chris Marshall, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for State.

## OPINION

CAMPBELL, Justice.

Appellant was convicted by a jury, in a single trial, of one capital murder and two aggravated robberies. The jury returned affirmative findings to the special issues under Art. 37.071, V.A.C.C.P., for the capital murder conviction. The trial judge assessed punishment at death. The jury assessed punishment for each of the aggravated robbery convictions at life in prison and a $10,000 fine.

Appellant appealed his capital murder conviction directly to this Court, raising nineteen grounds of error.[1] We will address two of those grounds. In Ground of Error No. 2, appellant challenges the sufficiency of the evidence to support the deliberateness of his conduct. Art. 37.071(b)(1), V.A.C.C.P. In Ground of Error No. 12 appellant argues that the trial court failed to grant his motion to sever the offenses, thereby forcing appellant to be tried for more than one felony offense. We will overrule Ground of Error No. 2 but reverse on Ground of Error No. 12.

On June 27, 1980, at approximately 4:00 p.m., appellant, armed with a gun, entered a bar in Tarrant County. Three patrons and three employees of the bar were present. Appellant ordered the bartender to put money in a bag. He ordered the other five occupants to empty their pockets onto the bar or a pool table. Appellant

---

1. Appellant appealed his aggravated robbery convictions to the Second Court of Appeals. That court dismissed the appeal, holding that it lacked jurisdiction. *Callins v. State,* 680 S.W.2d 680 (Tex.App.—Fort Worth 1984). We subsequently granted appellant's petition for discretionary review and today reverse the judgment of the Court of Appeals and remand that case for consideration of appellant's grounds of error. *Callins v. State,* 726 S.W.2d 555, 558 (Tex. Cr.App.1986). Therefore, in the instant case, we restrict our review to appellant's capital murder conviction.

threatened to kill anyone who held anything back. Allen Huckleberry, who was sitting at the bar, did not surrender his wallet quickly enough to suit appellant, and appellant shot him in the neck, causing him to bleed to death. Appellant went through the deceased's pockets, gathered the property from the five other victims, including George Torrez and Kathy Harmon, and fled. According to a witness in the bar, before fleeing, appellant told the remaining occupants of the bar to "take care of [the deceased]" and to "give him [appellant] a few minutes, then [they] could call somebody to help the deceased."

On August 19, 1980, appellant was charged, in a single eight count indictment, with capital murder, murder and aggravated robbery of Allen Huckleberry, aggravated robbery of George Torrez, aggravated robbery of Kathy Harmon, and aggravated robbery of the three other persons present in the bar. However, the State waived three of the aggravated robbery counts and proceeded to trial on the five remaining counts (capital murder, murder, and aggravated robbery of Allen Huckleberry, aggravated robbery of George Torrez and aggravated robbery of Kathy Harmon). (R. I-3-4).

On May 12, 1982, the jury was sworn and the trial began. On May 18, 1982, prior to submission of the charge to the jury, appellant made the following objection:

The Defendant further objects to the submission of the Court's Charge in the form submitted for the reason that the Defendant, in making its (sic) decisions originally upon whether or not to move for severance of certain felony charges from other felony charges upon the trial of this cause, the Defendant relied upon the state of the law as it existed at that time and since this trial has begun the landmark decision in the McWilliams case has in effect changed the law.[2] That is the landmark decision wherein the Texas Court of Criminal Appeals eliminated the doctrine of carving, has now caught the Defendant flatfooted and surprised and off guard and had he known of this decision prior when *he relied upon the old state of the law, he would have elected not to be tried in any more felonies alleged in this indictment than the law required him to* and would have in fact made a motion to sever prior to trial.[3] That the very decision in McWilliams has now taken advantage of the Defendant's reliance on the former state of the law, deprived him of a fair trial. Defendant objects to the Court's Charge in that particular and also moves for a mistrial on that basis. (R. XXXII-669-670).

The trial court replied:

... [W]ith regard to your objections, ... the Court understood you to reurge or to urge a Motion for a Mistrial based on the principles contained in McWilliams versus State. You are entitled to a ruling on that motion and the motion is denied.[4] (R. XXXII-677).

The jury first returned a verdict finding appellant guilty of the capital murder of Allen Huckleberry and of the aggravated robberies of George Torrez and Kathy Harmon. The jury then assessed punishment at confinement for life in the Texas Department of Corrections and a $10,000 fine for each of the aggravated robberies. The jury also answered the two special issues affirmatively, and the trial court assessed punishment at death.[5]

2. On May 12, 1982, this Court decided *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982) (Opinion on Rehearing), which abandoned the carving doctrine.

3. All emphasis is supplied by the author of this opinion unless otherwise indicated.

4. At the same time, the trial court also denied a written motion to sever, which had been filed by appellant prior to trial. (R. I-98-99; R. XXXII-677). However, the pre-trial motion, which had already been denied once prior to

trial, did not seek to sever the capital murder count from the remaining counts on the basis of misjoinder. Instead, it was a broad constitutional attack on the capital murder statute as being in conflict with Chapter 3 of the Penal Code. (R. XXVII-589). As such, the pre-trial written motion is not relevant to our disposition of the instant case.

5. The trial court submitted the guilt/innocence and punishment issues in trifurcated stages. The jury decided (1) guilt/innocence, (2) punishment on the aggravated robberies and, then,

In Ground of Error No. 2, appellant argues that there is insufficient evidence in the record to support the jury's finding on the first special issue. Article 37.071(b)(1), supra, requires the jury to find that appellant's conduct, which caused the death of Allen Huckleberry, was committed deliberately and with the reasonable expectation that the death of Allen Huckleberry would result. In particular, appellant argues that his instruction to his victims that they seek medical aid for Allen Huckleberry was inconsistent with a finding that his acts were committed deliberately and with the reasonable expectation that death would result.

The State responds that there was sufficient evidence for the jury to find that appellant's acts were deliberate and done with the reasonable expectation that the death of Allen Huckleberry would result. We agree.

In deciding the question of deliberateness, a jury must find that the State proved the issue beyond a reasonable doubt. Art. 37.071(c), V.A.C.C.P. Therefore, while this Court reviews sufficiency of the evidence in the light most favorable to the jury's verdict, we also must determine whether any rational trier of fact could have found the disputed question to have been proven beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Cr.App.1981).

Appellant entered a bar with a loaded firearm, began to rob the occupants and announced his intention of shooting anyone who held anything back. Appellant then decided that Allen Huckleberry was moving too slowly and shot him in the neck at close range. There was no evidence that the deceased had provoked the attack in any manner. From these circumstances alone we find that there was sufficient evidence for the jury to find that appellant's acts were deliberate and done with the reasonable expectation that death would result. See *Ex parte Alexander*, 608 S.W.2d 928, 931 (Tex.Cr.App.1980) (defendant's acts show deliberateness when he obtained and loaded weapon in anticipation of police officer returning to patrol car; defendant's acts show reasonable expectation that death will result when victim is shot in head at close range with .357 magnum revolver). See also *Smith v. State*, 540 S.W.2d 693 (Tex.Cr.App.1976).

While appellant may have shown some concern for Mr. Huckleberry's life after shooting him, that concern does not necessarily negate other evidence of the deliberateness of his acts prior to shooting him. We find, therefore, that a rational trier of fact could have found that appellant's conduct was deliberate. Ground of Error No. 2 is overruled.

In Ground of Error No. 12, appellant argues that the trial court erred by overruling his timely motion to sever, thereby permitting a single trial on one count of capital murder of Allen Huckleberry and two counts of aggravated robbery of George Torrez and Kathy Harmon. Appellant, invoking V.T.C.A., Penal Code, Chapter 3, § 3.04(a), argues that he had a mandatory right to sever the capital murder charge from the aggravated robbery charges.[6]

Appellant incorrectly argues that § 3.04(a), supra, grants him a mandatory right to severance. The mandatory right to a severance, under § 3.04, supra, only applies to joinder of property offenses.[7]

---

(3) punishment on the capital murder. While we might have doubts as to the appropriateness of such proceedings, and while appellant has several grounds of error addressing same, we need not address those grounds in light of our disposition of the instant case.

6. Chapter 3, § 3.04(a), supra, provides:
 Whenever two or more offenses have been consolidated or joined for trial under Section 3.02 of this code, the defendant shall have a right to a severance of the offenses.

Section 3.02 creates permissive joinder of "all offenses arising out of the same criminal episode." A "'criminal episode' means the repeated commission of any one offense defined in Title 7" of the Penal Code.

7. Property offenses are those offenses listed under Title 7 of the Penal Code. See n. 6, *ante*, at p. 181. Nonproperty offenses include all offenses other than those listed under Title 7 of the Penal Code.

*Overton v. State,* 552 S.W.2d 849 (Tex.Cr. App.1977); *Waythe v. State,* 533 S.W.2d 802 (Tex.Cr.App.1976). In the instant case, appellant sought to sever a capital murder count from two aggravated robbery counts. However, capital murder is not a property offense. It is listed as an offense against the person under Title 5 of the Penal Code. V.T.C.A., Penal Code, § 19.03. Appellant's right to sever the capital murder count, therefore, can not be supported by § 3.04(a), supra.[8] However, the right to force an election, which follows from implicit statutory restrictions relating to the manner in which nonproperty offenses may be joined in an indictment, is supported by our precedents.

We recently held that the Legislature, by its amendment of Article 21.24, V.A.C.C.P., has implicitly prevented the State from alleging, in a single indictment, two or more nonproperty offenses if those offenses arose out of the **same** criminal "incident, act or **transaction.**"[9] *Drake v. State,* 686 S.W.2d 935, 944 (Tex.Cr.App. 1985). From our reasoning in *Drake,* supra, we must also conclude that Article 21.24, supra, implicitly prevents the State from alleging both property and nonproperty offenses **together in the same indictment.** In addition, our common law has long prevented the State from alleging, in a single indictment, more than one nonproperty offense arising out of separate transactions. See *Campbell v. State,* 163 Tex. Cr.R. 545, 294 S.W.2d 125, 128 (1956) ("An indictment charging separate and distinct offenses in different counts is subject to the objection of misjoinder...."). See also *Smith v. State,* 101 Tex.Cr.R. 615, 276 S.W. 924 (1925); *Goode v. State,* 57 Tex. Cr.R. 220, 123 S.W. 597, 600 (1909).

 Taken together, these pleading limitations prevent the State, **in the presence of an objection,** from alleging more than one nonproperty offense in a single indictment, regardless of the number of transactions involved. Consequently, distinctions based upon the number of "transactions" present have been rendered meaningless for misjoinder purposes.[10] For the

8. Appellant, citing *Rice v. State,* 646 S.W.2d 633 (Tex.App.—Houston [1st] 1983, pet. ref'd), argues that § 3.04(a), supra, has been applied to nonproperty offenses in giving a defendant a mandatory right to sever. To the extent that *Rice,* supra, supports such a conclusion, it is overruled.

9. Generally, "transaction" has come to mean a criminal event and the various particular offenses committed within that event. See *Drake,* supra, at pp. 945–49 (Appendix). The starting and ending point of that event depends upon which definition this Court applies to the facts. *Id.* At least five such definitions have been developed, although no single definition has been consistently applied. See Practice Commentary, V.T.C.A., Penal Code, § 3.01. See also *Ex parte Ellison,* 699 S.W.2d 218 (Tex.Cr.App. 1985) (presence of one transaction is "obvious"); *Ex parte Siller,* 686 S.W.2d 617, 618 (Tex.Cr.App. 1985) (transaction = whatever parties agree it means); *Drake,* supra, at 940, n. 3 (transaction = all conduct directed at accomplishment of a single criminal objective); *id.,* at 947 (transaction = all conduct resulting from single guilty impulse); *McIntire v. State,* 698 S.W.2d 652, 656 (Tex.Cr.App.1985) (transaction = all conduct occurring within close time frame and with single guilty intent running through acts); *Fortune v. State,* 699 S.W.2d 706, 707 (Tex.App.—Beaumont 1985, pet. pending) (transaction = conduct directed at a particular victim).

10. "Transactions" are still relevant for the purpose of limiting convictions resulting from a single general jury verdict. See Art. 37.07 V.A. C.C.P. and cf. *Ex parte Siller,* 686 S.W.2d 617 (Tex.Cr.App.1985) (one of two convictions in same trial reversed, in absence of objection, because both nonproperty offenses arose out of the same transaction) with *Drake,* supra (both convictions in the same trial affirmed, in absence of objection, because each nonproperty offense arose from separate transactions). Cf. also *Ellison,* supra (one of two convictions in same trial reversed, in absence of objection, because both nonproperty offenses arose from same transaction); *McIntire,* supra, at 655, n. 2 (objection required before reversal of multiple convictions arising from separate transactions). But see and cf. Arts. 37.10 & 44.24 and *Wooten v. State,* 111 Tex.Cr.R. 524, 15 S.W.2d 635, 636 (1929) (appellate court lacks authority, even in the absence of an objection, to reform jury verdict to reflect single conviction; reversal of each conviction is required; number of transactions irrelevant). See also and cf. *Ex parte Johnson,* 697 S.W.2d 605, 612 (Tex.Cr.App.1985) (Clinton, J., dissenting). Moreover, these differences continue despite the absence of any use of the term "transaction" in Article 37.07, supra. However, we have no opportunity presently to resolve these ambiguities because appellant only seeks reversal on the basis of misjoinder. See Ground of Error No. 12, *ante,* at p. 179.

State to avoid joinder problems, an indictment for a nonproperty offense, whether arising from one transaction or separate transactions, should contain only one count [11] and as many paragraphs [12] as are necessary to allege the various manner and means of committing the one alleged offense.[13]

■ To avail himself of the pleading limitations implicit in Article 21.24, supra, a defendant should 1) file a pre-trial motion to quash the indictment or 2) urge, sometime during trial, that the State make an election. *Blackwell v. State*, 51 Tex.Cr.R. 24, 100 S.W. 774, 775 (1907).[14] Failure to object will result in waiver of the pleading requirements implicitly created by Article 21.24, supra. Article 1.14, V.A.C.C.P. *Drake*, supra, at 944.[15]

■ A defendant's pre-trial motion to quash should be granted by the trial court if the State has misjoined nonproperty offenses in a single indictment. However, a trial court has the discretion to deny a motion to quash and may, instead, force the State to elect a single offense for prosecution. *Smith v. State*, 64 Tex.Cr.R. 454, 142 S.W. 1173, 1175 (1912).

■ A defendant's timely motion to force the State to elect must be granted if the State has misjoined nonproperty offenses in a single indictment. *Crosslin v. State*, 90 Tex.Cr.R. 467, 235 S.W. 905, 906 (1921). Once the State has been forced to elect, any misjoinder error is cured. *Campbell*, supra.

■ The trial court has discretion to delay the election, once requested, until submission of the charge to the jury. However, if the trial court unnecessarily delays the election and thereby prejudices a defendant, then the trial court may be found to have abused its discretion. *Crosslin*, supra, 235 S.W. at 906–907, and cases cited therein.

11. A "count" is the portion of an indictment that charges a distinct statutory offense. 22 Tex. Jur.3d 665, *Criminal Law*, § 2370. The presence of more than one count in an indictment, therefore, would necessarily mean that more than one offense had been charged.

12. A "paragraph" is a subset of a count and is used to charge alternative methods of committing the **same** statutory offense. Art. 21.24(b), V.A.C.C.P.; *Riley v. State*, 658 S.W.2d 818 (Tex. App.—Fort Worth 1983, no pet.). The presence of separate paragraphs *within a single count*, therefore, would not signify the charging of more than one statutory offense, but rather signify the alternate manner and means of committing the same statutory offense. *Riley*, supra (alternative manner or means of committing murder may be charged in separate paragraphs of same indictment).

13. We do not decide whether the implicit pleading requirements of Article 21.24, supra, allow the State to join nonproperty offenses through separate indictments. However, even if the State could successfully join nonproperty offenses for a single trial through separate indictments, it would still face at least two remaining procedural hurdles that might prevent it from obtaining more than one conviction in a single trial. First, a defendant might still have a constitutional right to request severance of the offenses into separate trials. Art. I, § 10, Tex. Const.; *Ex parte Quintanilla*, 151 Tex.Cr.R. 328, 207 S.W.2d 377, 378 (1948) ("... [T]he trial of all four separate cases before the same jury at the same time over [defendant's] objection deprived him of the valuable right of a trial before an impartial jury in contravention of Art. I, Sec. 10, of the State Constitution...."). Second, even in the absence of an objection, it would seem that a trial court only has authority to accept a single general verdict from the jury in a trial for nonproperty offenses. Art. 37.07, supra; *Siller*, supra. See n. 10, *ante*, at p. 182. We believe that, following our abandonment of the carving doctrine, the State effectively will have to obtain multiple convictions for nonproperty offenses through multiple trials until the Legislature alters pleading and verdict restrictions. Given the mandatory right of severance under § 3.04, supra, the same practical result is likely to follow when the State attempts to obtain multiple convictions for *property offenses*.

14. Our reliance upon older cases is the result of an absence of any recent decisions involving how and when a defendant must object to misjoinder. The absence of recent decisions is understandable. Prior to May 12, 1982, a defendant could rely upon the more protective carving doctrine to avoid being convicted for more than one offense. *McWilliams*, supra. Consequently, there was little need to force the State to an election.

15. Even the constitutional right to severance may be waived. *Royal v. State*, 391 S.W.2d 410 (Tex.Cr.App.1965); *Watson v. State*, 488 S.W.2d 816, 818 (Tex.Cr.App.1973) ("It is apparent that since no objection was made, [defendant] waived his right to a separate trial [on three separate charges of sale of heroin].").

■ If a trial court fails altogether to require the State to cure its misjoinder, whether by denying a motion to quash the indictment or by denying a motion to force an election, an appellate court must reverse the conviction. To do otherwise would allow the State to disregard the implicit pleading restrictions of Article 21.24, supra, and thereby obtain multiple convictions from a single indictment in the face of a defendant's protestations. Allowing such a result would "thereby do violence to [the defendant's] rights to an election," *Smith v. State*, 90 Tex.Cr.R. 273, 234 S.W. 893, 894 (1921).

■ In the instant case, the State charged eight distinct counts in a single indictment. See facts, *ante*, at p. 179–180. Three counts were waived prior to trial, thus effectuating a partial election. Five separate counts then remained: capital murder, murder and aggravated robbery of Allen Huckleberry; aggravated robbery of George Torrez; and aggravated robbery of Kathy Harmon. Under these circumstances, we find that this indictment was subject to an objection for misjoinder for two reasons. First, it alleged more than one nonproperty offense (capital murder and murder). See *Drake*, supra, at 944. Second, it alleged nonproperty offenses and property offenses within the same indictment. See discussion, *ante*, at p. 183.

Appellant did not file a motion to quash the indictment on the basis of misjoinder.[16] However, appellant, after becoming aware of this Court's decision in *McWilliams*, supra, objected to the charge and moved for a mistrial prior to submission of the charge to the jury. In objecting to the charge, appellant made it clear that he was seeking either a severance, an election or a mistrial. Given these three options, it is readily apparent the trial court was required to sustain appellant's request for election, such request coming prior to submission of the charge to the jury and directing the court's attention to the misjoinder of the various offenses.[17] Therefore, the trial court should have required the State to elect between the five offenses alleged in the indictment. The State then could have cured the misjoinder by proceeding on the property offenses or, in the alternative, on one of the nonproperty offenses.[18]

Ground of Error No. 12 is sustained. We reverse the portion of the judgment convicting appellant of capital murder and remand to the trial court.

W.C. DAVIS, McCORMICK, TEAGUE, MILLER and WHITE, JJ., concur.

ONION, P.J., not participating.

CLINTON, Justice, concurring.

In the distinctly unusual posture of things in these causes, truly there is no extant precedent directly in point. Essentially, the opinions of the Court engage in an analysis of germane constitutional and statutory provisions to conclude that there has been a misjoinder of offense, such that "the trial court was required to sustain appellant's request for election," and that " 'case' equals conviction for a single of-

---

**16.** His failure to do so is understandable due to the state of the law, with respect to the carving doctrine, prior to the beginning of his trial.

**17.** We acknowledge that appellant's objection tended to group these three distinct forms of relief (severance, election and mistrial) into a single complaint. See facts, *ante*, at pp. 179–180. However, appellant's objection sufficiently apprised the trial court of his request for an election, given the fact that appellant addressed the abandonment of the carving doctrine. We need not decide the merit of appellant's request for severance and mistrial because we find the request for an election sufficient to require a reversal.

**18.** The State could have proceeded on the three counts of aggravated robbery because Article 21.24(a) permits the joinder of property offenses in a single indictment. However, the State, alternatively, could have proceeded on only one of the nonproperty counts (capital murder or murder) because Article 21.24, supra, implicitly prevents the State from alleging more than one nonproperty offense in a single indictment. *Drake*, supra. Had the State elected to proceed on the capital murder count, the trial court arguably could have submitted lesser included offenses in the jury charge. See Arts. 37.08 & 37.09, V.A.C.C.P.; *Day v. State*, 532 S.W.2d 302 (Tex.Cr.App.1976) (Opinion on Rehearing); *Aguilar v. State*, 682 S.W.2d 556 (Tex.Cr.App. 1985).

fense [so that] convictions and sentences for separate offenses ... are considered separate 'cases' [for purposes of prescribing jurisdiction on direct appeal]." While harboring some reservations, mainly about incidental observations made along the way and what may be less than complete examination of the meaning of "case," I join the opinions.[1]

## OPINION ON COURT'S OWN MOTION FOR REHEARING

McCORMICK, Presiding Judge.

Appellant was convicted by a jury, in a single trial, of one capital murder and two aggravated robberies. Following affirmative findings to the special issues under Article 37.071, V.A.C.C.P., the trial court assessed punishment at death. In the two aggravated robbery offenses, the jury assessed punishment at life in prison and a $10,000 fine for each.

Pursuant to Article 4.04, Section 2, V.A.C.C.P., the conviction for capital murder was appealed directly to this Court. Appeal of the two robbery convictions was taken to the Court of Appeals for the Second District of Texas at Fort Worth. See *Callins v. State*, 680 S.W.2d 680 (Tex.App. —Fort Worth 1984) reversed 726 S.W.2d 555 (Tex.Cr.App.1986).

On original submission of the capital murder, we reversed appellant's conviction based upon the misjoinder of the offenses at trial. An indictment alleging the offense of capital murder was joined, in the same indictment, with allegations charging two separate offenses of aggravated robbery. Appellant was subsequently found guilty of capital murder along with both aggravated robberies. We granted this rehearing on our own motion to determine whether the reversal was the proper disposition, or whether the capital murder conviction and death sentence should survive

despite the improper submission of the three misjoined counts in the original trial.

The trial court entered a single judgment reflecting that appellant had been found guilty of all three offenses. We will, for the reasons expressed below, reform the judgment to delete the convictions in the two aggravated robbery cases. Thereafter, we will examine appellant's numerous points of error raised in the appeal of the capital murder conviction and affirm the conviction and sentence of death.

As the State noted, there have been several tests utilized to determine which of two or more improperly joined offenses should be vacated in a reformation. In *Ex parte Siller*, 686 S.W.2d 617 (Tex.Cr.App. 1985), the Court sustained the conviction for which the jury returned the first guilty verdict, and then vacated the other convictions. The same procedure was followed in *Ex parte Ellison*, 699 S.W.2d 218 (Tex.Cr. App.1985). In *Ex parte Prince*, 549 S.W.2d 753 (Tex.Cr.App.1977), the Court sustained the conviction which was entered first upon the judgment. In *Ex parte Adams*, 541 S.W.2d 440 (Tex.Cr.App.1976), it was held that the case bearing the lowest number would be sustained absent a showing of which judgment was entered first. Finally, in *Ex parte Barron*, 568 S.W.2d 362 (Tex.Cr.App.1978), the Court simply followed the trial court's recommendation as to which conviction should be sustained.

The original opinion cites *Smith v. State*, 90 Tex.Crim. 273, 234 S.W. 893 (1921), for the proposition that the case should be reversed and remanded rather than reformed to show only a conviction for one offense. In *Smith*, the defendant was charged with three offenses: unlawful possession of intoxicating liquor, unlawful manufacture of intoxicating liquor, and unlawful possession of equipment for making intoxicating liquor. The jury returned a general verdict of guilty and assessed punishment at two years. The trial court en-

---

1. In Cause No. 69,023, for example, there are allusions to "ambiguities" in prior applications of the concept of "transactions." In Causes Nos. 0069–85 and 0070–85, for another, the conclusion seems further supported by the fact that "criminal case" and "criminal action" are used

interchangeably throughout the Code of Criminal Procedure, the latter ordinarily understood to be a "criminal prosecution" seeking to determine guilt or innocence of one accused of a penal offense. See generally, *Kemper v. State*, 63 Tex.Cr.R. 1, 138 S.W. 1025, 1038–1039 (1911).

tered judgment on the first two counts. This Court refused to reform the judgment to reflect only one conviction.

■ *Smith* is distinguishable from the present case. This Court is authorized to reform judgments. Article 44.24(b), V.A.C.C.P. If, however, the jury enters a general verdict of guilty on a multiple count indictment and assesses one punishment, the judgment cannot be reformed if it is unclear whether the punishment was assessed for one or all of the offenses. *Knott v. State*, 93 Tex.Crim. 239, 247 S.W. 520 (1922). This Court in *Smith* could not determine whether the two year punishment was for one, two or all of the offenses charged, therefore, it could not reform the judgment to reflect only one conviction.

By way of contrast, *Arnett v. State*, 105 Tex.Crim. 132, 286 S.W. 989 (1926), indicated that, if it was possible to insure that the defendant was only punished for one offense, one of the offenses could be upheld to the exclusion of the others. In *Arnett* the defendant was charged with rape and statutory rape. The jury returned a general verdict of guilty and assessed punishment at five years. The five year term was the lowest punishment possible for either count, so the court was correct in entering a judgment of guilty on one of the counts and dismissing the other. It was apparent that the jury had assessed punishment on only one of the counts, therefore, the court could choose one of the offenses with no harm to the defendant.

■ The present case is analogous to *Arnett* because it is possible to tell from the verdict that the jury assessed separate punishments for each of the three counts. This Court can choose one of the offenses to affirm because there is no danger appellant will be punished for more than one offense.

The judgment in this case indicates the jury first found appellant guilty of capital murder. In addition, the probability for confusion during the punishment phase was minimal; the record reflects the jury separately considered the special issues under Article 37.071 and the penalty possibilities for the aggravated robberies. The

judgment is not unclear as to the punishment assessed for capital murder after the unequivocal finding on the special issues by the jury. Therefore, we will reform the judgment to delete the convictions for the two aggravated robbery offenses. *Ex parte Siller*, 686 S.W.2d at 620; *Ex parte Ellison*, 699 S.W.2d at 219; and *Ex parte Adams*, 541 S.W.2d at 441.

We will proceed now to consider appellant's remaining points of error.

■ In his first point of error appellant contends the trial court erred in failing to provide a definition of the term "deliberately" in its charge to the jury. This Court has consistently held that a trial court does not err in refusing to define the term "deliberately" because such term is to be understood in light of common usage. *Purtell v. State*, 761 S.W.2d 360, 375 (Tex.Cr. App.1988) cert. denied —— U.S. ——, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex.Cr. App.1986) cert. denied 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987); and *Russell v. State*, 665 S.W.2d 771, 780 (Tex.Cr. App.1983) cert. denied 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). Appellant's first point of error is overruled.

In his second point of error appellant contends that the evidence is insufficient to sustain the jury's affirmative finding to special issue number one pursuant to Article 37.071(b)(1), V.A.C.C.P. The opinion of this Court on original submission addressed in detail this point of error and concluded that it was without merit. Based upon our original opinion we will again overrule appellant's point of error number two.

■ In point of error number three appellant contends that the indictment is fundamentally defective in that it fails to allege the punishment criteria to make the murder a capital murder. In his argument under this point of error, appellant contends that the State must plead in its indictment each of the elements required under Article 37.071, V.A.C.C.P. In other words, appellant would have the indictment make specific allegations as to each of the special issues which a jury must answer in order

to return a verdict requiring the imposition of the death penalty. In his argument, appellant complains that such deficiency is both fundamentally erroneous and fails to provide sufficient notice of the charges against which he must defend.

In *Castillo v. State*, 739 S.W.2d 280 (Tex. Cr.App.1987) cert. denied —— U.S. ——, 108 S.Ct. 2889, 101 L.Ed.2d 924 (1988), this Court addressed the same contention now being raised by appellant. Citing *Aranda v. State*, 640 S.W.2d 766 (Tex.App.—San Antonio 1982, no pet.), this Court concluded that a defendant who is charged under capital murder indictment is effectively put on notice that the special questions under Article 37.071, supra, will be issues in the case and that such procedural provisions need not be alleged in the indictment. See *Vigneault v. State*, 600 S.W.2d 318 (Tex. Cr.App.1980). Appellant's point of error number three is overruled.

In point of error number four, appellant contends the trial court erred in denying his challenge for cause to venireman Lewis Thomas Duran because such venireman had expressed racial prejudice against him. Specifically, appellant contends that venireman Duran expressed a view that blacks are more likely to commit aggravated robbery and murder than are members of other races because of the black culture. Based upon this interpretation, appellant contends he was wrongfully forced to use a peremptory challenge to strike Duran when his challenge for cause was overruled.

During questioning by defense counsel, the following transpired:

"Q. Do you have any opinions about whether Black people are more likely to commit the crime of aggravated robbery or murder?

"A. (By Mr. Duran) Because of color, probably not, because of culture, probably yes."

Prior to such questioning by defense counsel, the prosecutor examined Duran as follows:

"Q. You know that the defendant is a Black man.

"A. Uh-huh.

"Q. Could you treat him just like anybody else of any other color.

"A. I don't consider myself to be a prejudiced person.

"Q. All right.

"A. On the other hand I probably prefer my race, my friends, too maybe. I would try to be objective, I don't think the race would be an issue.

"Q. If the evidence were to show that the victim, that the deceased, was a white person or a Cuban, would that make any difference now in determining his guilt or innocence?

"A. The answer is the same, race is not an issue.

"Q. Or punishment?

"A. No."

No further development of any kind was made as to the venireman's comments relating to the race of appellant.

At the conclusion of the examination of venireman Duran by defense counsel, the following occurred:

"(By Defense Counsel): Your Honor, the defense has no more questions, but does wish to challenge on the grounds that Mr. Duran very frankly leans toward the upper end of the punishment scale. He has obviously some preconceived feelings about the type of punishment that should be assessed in any murder case. He is very frank to admit that. And we think that he has a bias or feelings that would influence his verdict in this case and prejudicial to the defendant and we would challenge the qualifications on that ground."

The trial court thereafter denied the challenge for cause and appellant used a peremptory to remove him from the panel.

Clearly, appellant's challenge at trial to venireman Duran differs from the objection which he now raises on appeal. Therefore, *nothing is preserved for review.* *Porter v. State*, 623 S.W.2d 374 (Tex.Cr. App.1981) cert. denied 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). Cf. *Sawyers v. State*, 724 S.W.2d 24 (Tex.Cr.App. 1986), and *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981), vacated 102 S.Ct. 497,

454 U.S. 959, 70 L.Ed.2d 374, on remand 632 S.W.2d 751 (Tex.Cr.App.1982).

 Additionally, appellant has waived any error with respect to this point by failure to request additional peremptory challenges. As the State correctly points out, appellant must establish the following: (1) the trial court overruled a valid challenge for cause; (2) appellant exhausted his number of peremptory challenges; (3) one or more disqualified jurors sat in the case, and (4) the trial court denied appellant's request for additional peremptory challenges or would have done so had they been requested by appellant. *Peters v. State*, 575 S.W.2d 560 (Tex.Cr.App.1979). The record revealed that having exhausted his peremptory strikes appellant requested and was granted one additional peremptory strike which was immediately used on venireman Nelson. Appellant never requested further additional peremptory strikes nor did he voice any objection to the jury or to any juror who was finally seated. *Allridge v. State*, 762 S.W.2d 146 (Tex.Cr.App. 1988) cert. denied — U.S. —, 109 S.Ct. 835, 102 L.Ed.2d 968 (1989). Appellant's point of error number four is overruled.

 In appellant's fifth and sixth points of error he contends the trial court erred in failing to grant a motion for mistrial or a motion to quash the jury panel because of alleged contamination of the panel. During voir dire, venireman Pruitt testified that another prospective juror—identified as Mr. Cannon—had referred to the defendant as a "nigger" and speculated as to how the defendant could afford to pay for the attorneys assigned to his case. These remarks represent the foundation of the contamination theory set out in appellant's points of error. In *Johnson v. State*, 151 Tex.Crim. 110, 205 S.W.2d 773 (1947), a case involving a prejudicial statement made before the jury panel by a prospective juror, this Court held that the defendant, in order to show harm after his motion to discharge the panel was denied, would have to meet the following criteria:

"It occurs to us that there is no error shown by the court's ruling because, (a) it is not made to appear that any of the other members of the jury panel heard the remark, (b) that if they did hear it, they were influenced thereby to the prejudice of appellant, (c) that the juror in question nor any other juror who may have had a similar opinion was forced upon appellant. In the absence of which no injury to him is shown." *Johnson*, 205 S.W.2d at 774.

See *Freeman v. State*, 556 S.W.2d 287, 307–08 (Tex.Cr.App.1977) cert. denied 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978). Appellant points to no place in the record demonstrating that any other veniremen heard the remarks of Mr. Cannon or if they did hear the remarks they were influenced to the prejudice of appellant. Further, appellant has failed to show that any other venireman who may have had a similar opinion was forced upon him. In addition, the trial court granted appellant an additional peremptory challenge because appellant had expended one peremptory challenge excluding Mr. Cannon prior to the court learning of his racial prejudice. Appellant's points of error five and six are overruled.

 In points of error seven and eight appellant complains the trial court committed reversible error because the verdict forms at the guilt/innocence phase of the trial failed to include a "not guilty" finding for each listed offense. Appellant's timely objection sufficiently preserved error on this point. Appellant contends that the lack of a "not guilty" form for each offense represented an instruction to the jury to make a finding of guilt on all offenses and represented a comment on the weight of the evidence by the trial court that deprived appellant of due process.

The verdict forms submitted to the jury at the guilt/innocence phase of the trial read as follows:

"VERDICT FORMS:

We, the jury, find the defendant, Bruce Edwin Callins, guilty of capital murder as charged in the indictment.

/s/ William D. Ramsey
Foreman

(If you have found the defendant guilty of capital murder *do not* consider Counts Two and Three.) (emphasis in original)

We, the jury, having a reasonable doubt as to the guilt of the defendant of the offense of capital murder as inquired about in Count One of the indictment, find the defendant

Bruce Edwin Callins, guilty of murder as charged in Count Two of the indictment.

_____

Foreman

We, the jury, having a reasonable doubt as to the guilt of the defendant of the offense of murder as inquired about in Count Two of the indictment, find the defendant, Bruce Edwin Callins, guilty of aggravated robbery as charged in Count Three of the indictment.

_____

Foreman

We, the jury, find the defendant, Bruce Edwin Callins, guilty of aggravated robbery as charged in Count Seven of the indictment.

/s/ William D. Ramsey
Foreman

We, the jury, find the defendant, Bruce Edwin Callins, guilty of aggravated robbery as charged in Count Eight of the indictment.

/s/ William D. Ramsey
Foreman

We, the jury, find the defendant, Bruce Edwin Callins, not guilty of any of the foregoing offenses.

_____

Foreman"

In addition, the jury charge, in pertinent part, instructed the jury as follows:

"IV.

"Now, bearing in mind the above and foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Bruce Edwin Callins, did, in Tarrant County, Texas, on or about the 27th day of June, 1980, while in the course of committing or attempting to commit the offense of robbery, as hereinabove de-

fined, upon Allen Huckleberry, intentionally cause the death of the said Allen Huckleberry by shooting him with a firearm, you will find the defendant guilty of capital murder and so say by your verdict. If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of capital murder as charged in Count One of the indictment and next consider whether the defendant is guilty of murder as charged in Count Two of the indictment. If, however, you have found the defendant guilty of capital murder as charged in Count One of the indictment, you will *not* consider the offense of murder as charged in Count Two nor of aggravated robbery as charged in Count Three, but will proceed to consider whether the defendant is guilty of aggravated robbery as charged in Counts Seven and Eight. (emphasis in original)

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Bruce Edwin Callins, did, in Tarrant County, Texas, on or about the 27th day of June, 1980, intentionally or knowingly cause the death of an individual, Allen Huckleberry, by shooting him with a firearm, you will find the defendant guilty of the offense of murder as charged in Count Two of the indictment and so say by your verdict. If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of murder as charged in Count Two of the indictment and next consider whether the defendant is guilty of aggravated robbery as charged in Count Three of the indictment.

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Bruce Edwin Callins, did, in Tarrant County, Texas, on or about the 27th day of June, 1980, then and there while in the course of committing theft of property, as that term is hereinabove defined, and with intent to obtain and maintain control of said property, intentionally or knowingly threaten and place Allen Huckleberry in fear of imminent bodily injury and death, and said

defendant did then and there use and exhibit a deadly weapon, to wit: a firearm, then you will find the defendant guilty of aggravated robbery as charged in Count Three of the indictment and so say by your verdict. If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of aggravated robbery as charged in Count Three of the indictment and so say by your verdict." [1]

In *Bolden v. State,* 489 S.W.2d 300 (Tex. Cr.App.1972), the defendant complained that the not guilty form submitted to the jury was improper. In spite of the lack of objection to preserve error the *Bolden* court concluded:

"Even if the matter were properly presented for review, we conclude that the jury was not misled by the form submitted. A more thorough form phrased like those for a finding of guilty should have been furnished. In construing the verdict and the charge as a whole which instructed the jury to find the appellant not guilty unless they believed beyond a reasonable doubt that he committed the act of robbery as alleged, we conclude no harm or reversible error has been shown." *Bolden,* 489 S.W.2d at 302.

See also *Berghahn v. State,* 683 S.W.2d 697 (Tex.Cr.App.1984) cert. denied 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985). The *Bolden* analysis was an extension of the teaching of *Harris v. State,* 106 Tex. Crim. 539, 293 S.W. 822 (1927). In *Harris* the defendant complained that an improper verdict form was submitted to the jury. The Court in discussing the verdict form problem stated:

"Our opinions are not in harmony upon the propriety of furnishing forms of verdict. Some hold it to be a commendable practice. [citations omitted]. Other opinions discourage the practice. [citations omitted]. But all are agreed that, if forms are provided, the court should include a form for every verdict which might be returned under the evidence and instructions of the court so as to avoid conveying to the jury any impression as to the judge's opinion as to what particular verdict should be rendered. [citation omitted]. Unless the forms provided in the present case violate the latter principle, the action of the court should not be held to call for reversal." *Harris,* 293 S.W. at 824.

The *Harris* court, however, overruled defendant's objection to the improper verdict form reasoning that the charge to the jury corrected any misapprehension the form may have conveyed to that body. *Harris,* 293 S.W. at 824.

We will evaluate his asserted harm in light of *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1984). In *Almanza,* we held:

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant, which means no more than that there must be *some* harm to the accused from the error.'" (Emphasis in original). 686 S.W.2d at 171.

Further:

"[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." 686 S.W.2d at 171.

With the *Almanza* test in hand and with the analysis provided by *Bolden* and *Harris,* we turn to an examination of the instant case. The charge to the jury in this case explicitly sets out the guilty/not guilty alternatives available for the jury's consideration. Considered as a whole, the substantive charge and the verdict forms gave the jury the opportunity to consider all legal possibilities in rendering its verdict. Further, the specific and thorough nature of the substantive charge eliminates the possibility that the jury would consider

---

**1.** We have not included that portion of the charge pertaining to the jury instructions on counts seven and eight. Those instructions are duplicative of the instructions reproduced in the text of the opinion.

the verdict forms as a comment by the court on the weight of the evidence. Following *Almanza*, we hold that appellant has failed to demonstrate reversible error as a result of the submission of the jury forms and that the trial court did not engage in an impermissible comment on the weight of the evidence in this case. Appellant's points of error seven and eight are overruled.

In point of error nine appellant argues that Article 37.071(b), V.A.C.C.P., violates the general prohibition against the jury's consideration of parole. Appellant's theory is founded on the notion that the wording of the second special issue instructed the jury that (1) a person receiving a life sentence will be released early, and (2) the jury is ordered to consider that early release in establishing their sentence. Appellant then attempts to demonstrate the effect of Article 37.071(b)'s "parole instruction" through the juror affidavit of Treva Roberts.

Appellant has couched his point of error in terms of an attack on Article 37.071(b) but the caselaw cited in support of his position relies entirely on juror misconduct in the context of motion for new trial. Appellant provides no support for his theory that Article 37.071(b) is, sub silentio, a jury instruction on parole. We reject appellant's position on that portion of his point. We turn to the question of juror misconduct and examine that problem with the guidance of *Sneed v. State*, 670 S.W.2d 262 (Tex.Cr.App.1984).

■ In *Sneed*, this Court adopted a five-prong test for determining whether a jury's discussion of parole law constitutes reversible error. It must be shown that there was:

"(1) misstatement of the law

(2) asserted as a fact

(3) by one professing to know the law

(4) which is relied upon by other jurors

(5) who for that reason changed their vote to a harsher punishment. (quotations omitted)." *Sneed*, 670 S.W.2d at 266.

The affidavit of juror Roberts gave some indication that discussion of parole had taken place in the jury room and influenced the jury's decision in assessing the death penalty. Juror Roberts, however, refuted the contents of that affidavit. While testifying at the hearing on motion for new trial Roberts was adamant in denying that discussion of parole took place in the jury room. Taken as a whole, Roberts testimony—the result of thorough direct and cross examination—revealed that none of the five prongs of the *Sneed* test were implicated in the instant case. The trial court did not abuse its discretion in overruling appellant's motion for new trial. Appellant's ninth point of error is overruled.

■ In point of error number ten appellant argues that the State made improper references to parole during final argument. During the punishment phase of trial, in arguing for the death penalty, the prosecutor stated:

"The Defense counsel would suggest to you not to consider any violence that the Defendant might do in prison because that doesn't—that's not part of our society, but the evidence from the people who were present clearly indicates that those people do become part of our society again and they do affect our society." [2]

Defense counsel then objected on the ground that the argument was an invitation to consider parole. The trial court overruled the objection.

Standing alone the statement made by the State during the punishment phase might be construed to represent an improper reference to parole. The record, however, reveals that the State was responding to a series of statements made by appellant's counsel to the jury. Appellant's attorneys repeatedly indicated that if the jury "put him in the penitentiary for life"

---

**2.** The objected remark also occurred in the context of testimony presented by a victim of an unprovoked attack by appellant. The victim of that attack, a prisoner at the time of the assault, had a history of probation revocation. As such, the prosecutor's statement also represented a proper summation of the evidence. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973).

that the appellant would never be a threat to society again.

The remarks made by the appellant's counsel placed the issue before the jury. The prosecutor, therefore, was entitled to answer the comments made by opposing counsel. No improper jury argument was made. See *Holloway v. State*, 525 S.W.2d 165, 169 (Tex.Cr.App.1975); *Daniels v. State*, 633 S.W.2d 899, 902 (Tex.Cr.App. 1982). Appellant's tenth point of error is overruled.

In ground of error number eleven appellant argues that Article 37.071, V.A.C.C.P., is violative of due process guarantees in that it fails to permit an individualized decision which takes into account all mitigating factors as well as mercy.

*Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), expressly upheld the constitutionality of the manner in which mitigating evidence is considered under the special questions submitted to Texas juries per Article 37.071. Complying with *Jurek*, *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and their progeny, this Court has resolutely declared that a defendant in any capital murder case is free to ask the jury to consider whatever evidence of mitigating circumstances the defense can bring before it. See *Quinones*, 592 S.W.2d 933, 947 (Tex.Cr.App.1980). See also *Cordova v. State*, 733 S.W.2d 175, 189–190 (Tex.Cr. App.1987) cert. denied, —— U.S. ——, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988); *Johnson v. State*, 691 S.W.2d 619, 625–626 (Tex. Cr.App.1984) cert. denied, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985); *Stewart v. State*, 686 S.W.2d 118, 121 (Tex.Cr.App. 1984) cert. denied, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985).

We note that appellant did not request additional instructions regarding mitigating evidence during the punishment phase of the trial. Appellant has, however, pointed to mitigating evidence in the record that he contends could not be properly considered by the jury unless some means was provided to the factfinder to consider that evidence outside the constraints of the special issues.[3] Specifically, appellant directs our attention to that part of the record where testimony indicates that he told other parties at the scene of the crime—"y'll can take care of him" (referring to the victim) as he departed the scene.

Though phrased in terms of a facial attack on the constitutional validity of Art. 37.07, appellant has briefed this point in language that requires an examination of the constitutional validity of our capital murder statute as applied to him. In *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the United States Supreme Court held the Texas capital murder statute unconstitutional "as applied" in the face of a challenge based on lack of additional instructions concerning mitigating circumstances.[4] None of the mitigating factors in *Penry*—mental retardation or child abuse—play a part in the instant case.

Appellant's point of error is more appropriately analyzed in light of *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion). In *Franklin*, the defendant sought a special instruction on the basis of evidence that showed he had no record of disciplinary violations while in prison. *Franklin*, at ——, 108 S.Ct. at 2329, 101 L.Ed.2d at 168. The *Franklin* plurality held that "petitioner was accorded full opportunity to have his sentencing jury consider and give effect to any mitigating impulse that petitioner's prison record might have suggested to the jury as they proceeded with their task." *Franklin*, at ——, 108 S.Ct. at 2329, 101 L.Ed.2d at 168.

Concurring in *Franklin*, Justice O'Connor pointed out that an additional instruc-

---

**3.** Appellant cited other potential mitigating evidence in his brief but failed to support his assertions with reference to the record.

**4.** The *Penry* majority adopted the view of the five concurring and dissenting Justices in *Franklin*. Those Justices reasoned that *Jurek*, supra, did not preclude, in a particular case, special instructions that would give effect to mitigating evidence that fell beyond the scope of the special verdict questions. *Penry*, —— U.S. ——, ——, 109 S.Ct. 2934, 2948–49, 106 L.Ed.2d 256, 279–80 (1989).

tion might be warranted based on the facts of a particular case. As Justice O'Connor noted:

"If ... however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions, the jury instructions would have provided the jury with no vehicle for expressing its 'reasoned moral response' to that evidence. If this were such a case, then we would have to decide whether the jury's inability to give effect to that evidence amounted to an Eighth Amendment violation." *Franklin*, at ——, 108 S.Ct. at 2333, 101 L.Ed.2d 173.

Further, Justice O'Connor's additional observation that relevant evidence outside the scope of the special questions such as "[e]vidence of voluntary service, kindness to others, or of religious devotion might demonstrate positive character traits that might mitigate against the death penalty" and thus be subject to an additional instruction does not militate in favor of appellant. *Franklin*, at ——, 108 S.Ct. at 2333, 101 L.Ed.2d at 173.

■ The offhand remark by appellant, as he departed the scene of the crime, that others could take care of the deceased allowed no more action than would have normally occurred in the aftermath of a shooting. The appellant did nothing immediately after shooting the deceased to ameliorate the damage he caused. Following Justice O'Connor's reasoning in *Franklin*, we hold that appellant has not presented mitigating evidence that warrants an additional instruction to the jury. Appellant's eleventh point of error is overruled.

In appellant's (second) point of error eleven and his twelfth point of error appellant argues that the trial court erred in permitting a single trial on capital murder and two aggravated robberies and in denying appellant's motion to sever. Having previously reformed appellant's judgment to delete the convictions for the two aggra-

vated robbery offenses, we overrule points of error eleven (second) and twelve.

■ In appellant's thirteenth point of error he contends that during the punishment phase the trial court erred in submitting the robbery counts to the jury in the same trial as the capital murder case. Appellant's theory is founded on the premise that the trial court's submission of the punishment issue on the aggravated robberies followed by the punishment issue on the capital murder conviction created a trifucated trial structure which had a "severely prejudicial" effect on appellant's rights under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution.

Appellant specifically contends that as a result of the trifurcated punishment phase the jury wanted the "murder charge to be stronger than the robbery cases which had already been life and a 10,000 fine." In support of his theory appellant cites *Hood v. State*, 169 Tex.Crim. 422, 334 S.W.2d 302 (1960), and *Hill v. State*, 169 Tex.Crim. 104, 332 S.W.2d 579 (1960). Both cases are inapposite; *Hood* and *Hill* go to the question of misjoinder of offenses and have no bearing on this point of error. Other than bald faced assertions of prejudice, appellant has failed to provide any relevant case-law supporting his position. We decline his invitation to find a fundamental defect in the trial process under which he was convicted based on either the Texas or United States Constitution.

■ In addition, we note that during the punishment hearing on the non-capital cases that the trial court ordered the prosecution to comply with the narrower rules of evidence under Article 37.07, V.A.C.C.P. During the punishment phase on the aggravated robberies the State only offered the testimony of three character witnesses. After the jury returned its verdicts on the aggravated robberies a second punishment hearing was held on the capital murder charge. It was only during this hearing that the State was permitted to introduce testimony about unadjudicated, extraneous offenses committed by appellant under the broader rules of Article 37.071, supra.

This procedure assured appellant that the jury would not consider any inadmissible evidence when deliberating on punishment for the aggravated robberies. Further, no evidence adduced during the first punishment phase would have been inadmissible in a single trial on capital murder. See *Jurek*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Any error in the procedure of the punishment phase was harmless error. See *Harris v. State* (No. 69,366, Tex.Cr.App., June 28, 1989), slip op. pp. 29–36. Appellant's thirteenth point of error is overruled.

In point of error number fourteen appellant argues that the trial court erred in overruling appellant's motion to quash the indictment on the grounds it failed to give proper notice of the crime charged by failing to name the person allegedly being robbed.

In part the indictment in this case states: "BRUCE EDWIN CALLINS ... THEN AND THERE INTENTIONALLY CAUSE THE DEATH OF AN INDIVIDUAL, ALLEN HUCKLEBERRY, BY SHOOTING HIM WITH A FIREARM, AND THE SAID BRUCE EDWIN CALLINS WAS THEN AND THERE IN THE COURSE OF COMMITTING AND ATTEMPTING TO COMMIT THE OFFENSE OF ROBBERY OF ALLEN HUCKLEBERRY; ..."

The indictment in this case does allege the victim of the robbery and is therefore sufficient to bar subsequent prosecution against appellant for the same offense and to give him adequate notice of the offense with which he was charged. See *King v. State*, 594 S.W.2d 425 (Tex.Cr.App.1980). Appellant's fourteenth point of error is overruled.

In appellant's points of error numbers fifteen and sixteen, appellant argues that the trial court improperly excluded venireman Denton for cause on the basis that he was not unalterably opposed to the death penalty. Appellant's points are grounded on the premise that a citizen cannot constitutionally be sentenced to death if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed religious scruples against the infliction of death.

In the trial court, the proper standard to be used in disqualifying prospective jurors in death penalty cases is whether their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions given and the oaths taken. *Bell v. State*, 724 S.W.2d 780, 794 (Tex.Cr.App.1986) cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Sharp v. State*, 707 S.W.2d 611, 620 (Tex.Cr.App.1986) cert. denied — U.S. —, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). "[T]his standard ... does not require a juror's bias [or prejudice] be proved with 'unmistakable clarity.'" *Ellis v. State*, 726 S.W.2d 39, 43 (Tex.Cr.App.1986) cert. denied, 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987), quoting *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). On appeal, we recognize that great deference must be given to the trial court judge who is in the best position to see and hear the prospective jurors and to evaluate their responses. The trial court is in the best position to evaluate the venireman's answers and to rule accordingly. As stated in *Wainwright:*

"[A] trial judge's finding that a particular venireman was not biased and therefore properly seated was a finding of fact subject to [28 U.S.C.] § 2254(d). We noted that the question whether a venireman is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the veniremen's state of mind. We also noted that such finding is based upon a determination of demeanor and credibility that are peculiarly within the trial judge's province. Such determinations are entitled to deference even on direct review...." 469 U.S. at 428, 105 S.Ct. at 854 (footnote omitted).

As such, we will reverse a trial court's ruling on these issues only when the record shows a clear abuse of discretion on the trial court's part.

Venireman Denton testified as follows:

"Q. Could you personally, acting as juror, ever vote so that the death penalty would be inflicted?

"A. I can't say right now. I don't believe I would. I have no objection to a life sentence, but I don't know how I would react at the time, but I don't think I could do that.

"Q. We seem—

"A. I hope I couldn't do it.

\* \* \* \* \* \*

"A. I believe the death penalty is dumb. I—I—I—I just can't imagine a state that would—would condone a death penalty. It's—it's. . . .

"Q. I take it, then, Mr. Denton, that you personally would exclude the death penalty as a punishment that you personally could vote to inflict?

"A. I have up to now. Again, I don't know how I would react if I was on a—the jury. I'm not sure if it came right down to it, but that's the way I feel now.

\* \* \* \* \* \*

"A. I told you I don't believe in the death penalty. You asked me if I could enforce it. Right now I could not. I would vote against the death penalty.

"Q. Okay, and that would be, I take it, regardless of what facts might be developed at a trial?

"A. Well, yeah, yeah, sure.

"Q. Okay, so as you sit there right now, the death penalty that you would automatically exclude as one that you would assess?

"A. Yes."

Defense counsel then examined venireman Denton as to his beliefs regarding the death penalty in the context of a brutal set of facts; in other words, would the juror vote yes under those particular circumstances. Juror Denton answered:

"I think the reason that I did not give a more definite answer is that whenever this decision has to be made, it's going to be down the road sometime, three weeks, maybe four weeks. I would assume that I'll feel the same way. I'm not sure that I would. I can only answer what I would do now."

At the end of the venireman's examination the State's challenge for cause was granted over appellant's objection. The State is entitled to jurors in a capital case who "will consider and decide the facts impartially and conscientiously apply the law as charged by the court." *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589 (1980). Our reading of the record, accompanied with the trial judge's opportunity to observe the venireman's demeanor, leads us to the conclusion that juror Denton was properly dismissed for cause. See *Wainwright v. Witt*, 469 U.S. at 431–35, 105 S.Ct. at 856–58; *Landry v. State*, 706 S.W.2d 105 (Tex. Cr.App.1985) cert. denied 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986). Under *Wainwright v. Witt*, supra, the trial court did not abuse its discretion in sustaining the State's challenge for cause. Appellant's points of error fifteen and sixteen are overruled.[5]

In his seventeenth point of error appellant argues that the trial court erred in sustaining the State's challenge for cause to venireperson White. White testified:

"Q. I take it then that you would—you personally would automatically exclude the death penalty as a punishment that you could assess for any crime?

"A. Yes.

"Q. And no matter what the facts were?

"A. (No response.)

"Q. Well, in Texas, it could only be a murder. That's all. A capital murder is the only offense that we have that we assess the death penalty in.

"A. Those are my feelings, yes.

**5.** Appellant's points of error fifteen and sixteen also implicate error regarding the seating of a death qualified jury. This Court has addressed that point adversely to appellant's implied position. Death qualification of a jury does not violate the Sixth Amendment right to an impartial jury. *Modden v. State*, 721 S.W.2d 859 (Tex. Cr.App.1986).

"Q. Okay. And I take it that that's a deep-seeded feeling that you have?

"A. Very deep.

"Q. And one which you would not set aside or could not set aside?

"A. If it involved family, I don't know what I would do. I don't know what my feelings would be.

"Q. You mean your own family?

"A. If it were someone in my own family.

"Q. If it were your own family, you would never be called upon to be on the jury.

"A. I know that, yes.

"Q. But aside from that, you would not ever personally do it?

"A. Yes. Correct."

In *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979), we confronted a similar problem; that is, a venireman stating that he would consider the death penalty only if the victim of the crime were a member of his family. We held:

"In such a circumstance, venireman Bowman would be unable to serve as a juror because of his interest and prejudice in the case. Article 35.16, Vernon's Ann.C. C.P. The ability to consider capital punishment as a tool of vengeance by a person aggrieved by the loss of a family member is surely not within the contemplation of *Witherspoon* [*v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)].... The voir dire of Bowman revealed that he would not vote for capital punishment in a case where he was otherwise qualified to sit as a juror. In those situations, Bowman was resolved to vote against capital punishment, regardless of the evidence produced. He was properly excused under *Witherspoon*." *O'Bryan*, 591 S.W.2d at 473.

In this case, as in *O'Bryan*, the trial court did not abuse its discretion in sustaining the State's challenge for cause. Point of error seventeen is overruled.

▋ In point of error eighteen appellant asserts that venireperson Wolfe was improperly excluded from the jury. Appellant points to selected portions of the record in attempting to show equivocation on the part of Wolfe regarding imposition of the death penalty. The record reflects nothing of the sort. Venireperson Wolfe was unwavering in her opposition to the death penalty. Under *Wainwright*, supra, the trial court did not abuse its discretion in sustaining the State's challenge for cause.

▋ In point of error number nineteen appellant argues that the trial court erred in denying appellant the right to impeach State's witness Ricky Henderson on the basis of Henderson's probationary status of deferred adjudication.

Appellant cites *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in support of his position. In *Davis*, petitioner was denied his constitutional right of confrontation because he was not allowed to impeach a witness on the basis of his juvenile record regarding probation for burglary. Unlike this case, the petitioner in *Davis* was able to show that the witness might have been subject to undue pressure from the police and made his identification of petitioner under fear of possible probation revocation. This showing by the petitioner overcame the State's asserted interest in preserving the confidentiality of juvenile delinquency proceedings. In the instant case, however, appellant has not made any showing that witness Henderson testified against him as a result of bias, motive or ill will emanating from his status of deferred adjudication. Appellant has failed to lay the necessary predicate that would invoke the right of confrontation. See *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cf. *Evans v. State*, 519 S.W.2d 868 (Tex.Cr.App.1975) (Defendants' right of confrontation denied when they were not allowed to impeach State's witness on the basis of his felony indictment in order to show bias in testimony). Appellant's nineteenth point of error is overruled.

The judgment of the trial court is affirmed.

CLINTON and DUNCAN, JJ., concur in result.

TEAGUE, J., dissents.

CAMPBELL, J., dissents for the reasons stated in his dissenting opinions in *Fortune v. State*, 745 S.W.2d 364 (Tex.Cr.App.1988) and *Holcomb v. State*, 745 S.W.2d 903 (Tex.Cr.App.1988).

MILLER, Justice, concurring.

I agree with the majority opinion that this Court may choose one of the convictions to affirm and reverse the other two because there is no danger appellant is being punished for more than one offense. I disagree, however, with the method the majority opinion uses to determine which conviction shall survive. I write to summarize the several tests used by this Court in the past and to suggest a test for appellate courts to use when making this determination.

A number of different methods of choosing which conviction to affirm have been utilized but vary with the facts of the individual case. The five predominant methods are as follows:

1—The most popular method is to choose the offense that the defendant was convicted of first. *Ex parte Ellison*, 699 S.W.2d 218 (Tex.Cr.App.1985); *Ex parte Siller*, 686 S.W.2d 617 (Tex.Cr.App.1985); *Ex parte Prince*, 549 S.W.2d 753 (Tex.Cr.App.1977); *Ex parte Easley*, 490 S.W.2d 570 (Tex.Cr.App.1972).

2—At other times this Court has affirmed the conviction that had the lowest number on the charging instrument. *Ex parte Adams*, 541 S.W.2d 440 (Tex.Cr.App.1976); *Price v. State*, 475 S.W.2d 742 (Tex.Cr.App.1972).

3—In *Beaupre v. State*, 526 S.W.2d 811 (Tex.Cr.App.1975), *cert. den.* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975), this Court chose the offense that was alleged first in the indictment.

4—In *Jones v. State*, 482 S.W.2d 194 (Tex.Cr.App.1972), *cert. den.* 410 U.S. 932, 93 S.Ct. 1377, 35 L.Ed.2d 594 (1973), this Court chose the conviction for possession of heroin over the conviction for possession of marijuana because there was "more proof" for possession of heroin.

5—In *Barron v. State*, 568 S.W.2d 362 (Tex.Cr.App.1978), no reason was offered to justify affirming a conviction for murder and dismissing a conviction for robbery by assault.

This multiplicity of tests arose because none of the tests works well in all situations. It is often impossible to tell which conviction technically came first. As a practical matter, in a majority of cases all of the convictions are decided together. It makes little sense for an appellate court to place significance on the order the convictions were entered or the order the offenses were alleged in the indictment when the order was arbitrary at the trial level. When each offense is charged in a separate charging instrument it is easy to pick the offense with the lowest number. Unfortunately, in most cases, all of the offenses are joined in one charging instrument. Finally, it is inappropriate for an appellate court to decide which offense was supported by "more evidence". As long as there is sufficient evidence to support a conviction, the relative "weight" of the evidence should not be considered.

In order to avoid the arbitrariness that necessarily flows from having a number of different rules, or in some cases no rule at all, I believe that there should be one rule that can be applied every time a defendant is convicted of more than one offense. A rule that is most consistent with the objectives of the Penal Code as articulated in V.T.C.A. Penal Code, sec. 1.02, would be one that mandates affirmance of the conviction for the most serious offense.

This proposed rule, choosing the conviction for the most serious offense, is superior in a number of ways to all of the other rules previously used.

First, it will be applicable to all cases where there is misjoinder of offenses.

Second, it does not attempt to make arbitrary distinctions based on which allegation or conviction preceded the others. The outcome of a case will not depend on the coincidence of the order of offenses in an indictment or jury charge.

Third, it assumes that if the State had been made to elect an offense, it would have chosen the most serious one. This

will be true in a majority of the cases. It cannot be said that the State would usually pick the first offense.

Last, it is the most consistent with the objective of the Penal Code "to insure the public safety through: (A) the deterrent influence of the penalties hereinafter provided." V.T.C.A. Penal Code, sec. 1.02.

The rule then should be that in the absence of harm that vitiates all convictions obtained from one indictment when a defendant is charged with and convicted of more than one offense in violation of Art. 21.24, V.A.C.C.P.,[1] the appellate court will affirm the most serious offense (as determined by the sentence and other relevant factors) and dismiss the other convictions.

Applying this new rule to the case *sub judice* would result in our affirmance of the capital murder conviction and dismissal of the two aggravated robbery convictions. Capital murder is, obviously, a capital felony which carries the ultimate penalty, death by lethal injection, which appellant was assessed as punishment. Aggravated robbery is, by comparison, a less serious offense in that it is only a first degree felony carrying a maximum penalty of life imprisonment and $10,000 fine, both of which appellant received in this case. Thus, under this proposed rule, I reach the same result as the majority opinion.

Additionally, as to point of error nineteen, I believe that any error resulting from the trial court's denial of appellant's right to impeach Henderson is harmless error under Tex.R.App.Proc. 81(b)(2), so I concur in the result reached on that point.

With these additional comments, I join the remainder of the majority opinion.

---

**1.** It is important to note that, in this case, appellant was not harmed by the admission of evidence relevant to the two aggravated robbery counts. The evidence offered by the State would still have been admissible at punishment even if the State had elected to pursue conviction on only one offense. In another situation, however, if the State insists on misjoining offenses in a charging instrument and gains an advantage it would not have had if it had followed the law (such as the admission of details of other offenses), reversal may well follow. In this later situation, the rules regulating admission of extraneous offenses will govern, except as in a case such as this one, a capital murder, where evidence of extraneous offenses is admissible.