NO. 07-00-0465-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



NOVEMBER 2, 2000



______________________________




JOHN B. LEWIS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2000-432853; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ABATEMENT AND REMAND


 Upon a plea of not guilty, appellant John B. Lewis was convicted by a jury of
possession of a controlled substance, and punishment was assessed by the trial court at 
35 years confinement. The judgment contained in the clerk's record reflects that sentence
was imposed on August 10, 2000, and that the notice of appeal was filed on September
20, 2000. The reporter's record, however, shows that the punishment phase of the trial
was held on September 1, 2000. The date sentence is imposed is essential in determining
the time in which to perfect an appeal. Tex. R. App. P. 26.2. Because no motion for new
trial was filed, appellant's notice of appeal was due to be filed within 30 days of August 10,
2000, the date sentence was imposed. Tex. R. App. P. 26.2(a)(1). From the face of the
judgment, the notice of appeal filed on September 20, 2000, appears untimely. 

 Thus, we now abate this appeal and remand the cause to the trial court for a
determination of the appropriate sentencing date. We direct the trial court clerk to forward
a corrected judgment in a supplemental clerk's record to the Clerk of this Court by
Thursday, November 30, 2000.

 It is so ordered.

 Per Curiam





Do not publish.



 statements were made in its
presence; 2) erred in not suppressing testimony relating to appellant after his arrest and
without his being "Mirandized"; 3) erred in not suppressing all testimony regarding any
statements made by appellant while he was under arrest; 4) abused its discretion in
permitting inadmissible hearsay testimony; 5) abused its discretion by admitting testimony
from lay witnesses not properly qualified to express opinions as to the nature of the alleged
contraband; 6) abused its discretion in admitting testimony about the composition of the
alleged contraband when a proper predicate had not been laid for the receipt of such
testimony; 7) & 8) erred in not granting appellant's motion for instructed verdict or, in the
alternative, by not partially granting the motion and charging the jury only on a lesser-
included offense; and 9) abused its discretion in permitting testimony at the punishment
hearing as to appellant's alleged gang affiliations.

Factual Background

 On December 7, 2001, law enforcement authorities executed a search warrant of
the premises located at 1516 East 25th Street in Lubbock. The State produced testimony
that the house was located between 760 and 819 feet from a local school. The search
warrant identified various individuals to be searched that did not include appellant.
However, the warrant did authorize the search of persons "occupying and controlling" the
premises. As the Lubbock S.W.A.T. team arrived at the location, there were two
individuals in the front yard. One of the individuals, not appellant, ran into the house as the
officers approached. Officer Billy Koontz of the Lubbock Police Department testified that
as he entered the house, he saw appellant in the living room, pursued him into the
southeast bedroom, put him down and handcuffed him. Koontz testified that as he did so,
appellant had a cell phone in one hand and was reaching for a black jacket located on a
bed in the room. 

 A large quantity of suspected crack cocaine was located at the house. There was
also an amount of cocaine located in the small pocket of the black jacket that the State's
testimony showed weighed approximately 2.97 grams. The packaging of all the cocaine
was similar and its color was the same which, according to the State's evidence, was an
indication that all of the crack cocaine came from the same batch. The officers also found
a .25 caliber pistol in the black jacket which contained a magazine with six live rounds. A
search of the bedroom produced a shotgun in the attic crawl space, a second pistol under
another bed in the room, and a digital scale under the mattress of the bed upon which the
black jacket was located. Appellant had $433 in his pants pocket.

 Officer Koontz averred that appellant was taken outside the house and because it
was cold, asked for his jacket. Koontz told Investigator Paschall to take the black jacket
outside, hold it up, and "try to make a determination if it was his [appellant's]." Over
objection, Paschall was allowed to say that appellant admitted the jacket was his. Koontz
said that he was standing in the doorway of the house and actually heard appellant admit
his ownership of the black jacket. Eventually, Koontz said, he took the jacket out to the
investigator's car to take to the police department. As he did so, he said, appellant asked
"several times" if he could have the jacket.

 Officer Koontz testified that as the search was going on, he heard the occupants of
the house, including appellant, having a conversation between themselves. He averred
that appellant and another of the occupants said they knew who had "set them up"
because the person had just called on the phone, and they were "going to get them as
soon as they got out of jail." Koontz denied that any of the statements were in response
to questions asked by the officers. 

 Appellant testified that he was already in the bedroom when the officers arrived and
denied he was chased into the room. According to him, after he had been taken outside,
an officer held up the black jacket and asked if it was his. At first, he said it was his jacket,
but then realized it was not and denied ownership of it. At trial, appellant introduced a Bulls
jacket he said was actually his and that he had worn at the time. He explained his
possession of the money by saying he was changing schools, and needed the money to
buy new clothes. Although appellant admitted he heard some of the others make
statements about who set them up, he denied that he ever participated in any such
discussion. Other portions of the evidence will be referred to as they become necessary
to a discussion of the appeal.


Discussion

 The colloquy that gives rise to appellant's first point occurred during his counsel's
interrogation of the jury panel. Counsel was explaining the fact that an indictment by itself
was not evidence of guilt. During the course of the colloquy, the juror had made
statements that expressed an opinion to the contrary. At the conclusion, appellant's
counsel asked permission of the trial judge to approach the bench for the purpose of
making a motion "I would rather state at the Bench." The court replied, "[i]f it has to do with
a juror, you can wait until we get through with voir dire." Counsel made no objection, nor
did he do anything further until the completion of the voir dire of the panel as a whole. At
that time, he unsuccessfully moved to quash the panel on the basis that the juror's remarks
were hopelessly prejudicial and had unduly influenced the panel by "his stubbornly held
assertion or belief that an indictment is evidence of guilt."

 Appellant acknowledges that the propriety of the trial court's action is reviewed on
an abuse of discretion test. See Clark v. State, 608 S.W.2d 667, 669 (Tex. Crim. App.
1980). Texas Rule of Appellate Procedure 33.1 requires that a timely request, motion, or
objection be made to the trial court "with sufficient specificity to make the trial court aware
of the complaint" and that the trial court ruled on the matter, or refused to do so, and the
complaining party objected to the refusal to rule. Absent such an objection, motion or
request, error is waived unless it is so egregious that the failure to object does not waive
the error. Janecka v. State, 823 S.W.2d 232, 243 (Tex. Crim. App. 1990). The
requirements of Rule 33.1 are not merely technical procedures by which appellate courts
seek to overrule points of error in a cursory manner. The failure to present a particular
argument to the trial court, and then making such an argument to the appellate court, in
effect usurps the trial court's function of ruling on such arguments and controlling the
admission or exclusion of evidence at trial. The contemporaneous objection rule also aids
judicial economy in calling the trial court's attention to what might be an error and giving
it an opportunity to avoid possible reversal with all attendant delay and expense to all
concerned. All that a party has to do to avoid the forfeiture of a complaint on appeal is to
let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly
enough for the judge to be in a proper position to do something about it and obtain a ruling
from the trial judge. See Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992);
Cacy v. State, 942 S.W.2d 783, 785 (Tex. App.-Waco 1997, pet. ref'd). However, there
is an exception to that general rule in situations where the error is so egregious that it
cannot be waived. See Janecka, 823 S.W.2d at 243 n.2 . We have examined the colloquy
and it was not so egregious that an instruction to disregard would not have been sufficient
to cure any error. Thus, by his failure to articulate his motion and obtain a ruling upon it
until the examination of the jury panel as a whole was completed, appellant waived his
complaint.

 Moreover, even assuming arguendo that appellant's belated motion was sufficient
to comply with the rule, the record still does not show reversible error. In order to show
harm as a result of the trial court's denial of the motion, appellant must have established
1) that the other members of the panel heard the exchange, 2) that if they did hear it, they
were influenced by the exchange to the prejudice of appellant, and 3) that either the juror
in question or another juror who may have had a similar opinion was forced upon appellant.
Callins v. State, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986). The record before us
contains no such showing. The trial court did not abuse its discretion in its ruling and
appellant's first point is overruled.

 The gist of appellant's second point complaint is that the trial court erred by not
suppressing the State's testimony that appellant admitted ownership of the black jacket
found on the bed in the room in which appellant was arrested. He argues that the alleged
admission was made after he was under arrest and at a time before he was given his
Miranda (2) warnings. He further argues that the question addressed by Investigator Paschall
at Officer Koontz's request was a custodial interrogation within the purview of Miranda and,
because his reply was an admission that tended to establish his guilt or amounted to a
declaration against his interest, the failure to suppress the testimony requires reversal. 
Parenthetically, appellant correctly points out that the difference between the terms
admission and confession is no longer material in our determination of this point. See
Garner v. State, 464 S.W.2d 111, 112 (Tex. Crim. App. 1971). Appellant also argues he
did not waive his Fifth Amendment issue by giving his version of the conversation that took
place after Paschall showed him the black jacket. In supporting that position, he cites
Alvarez v. State, 511 S.W.2d 493 (Tex. Crim. App. 1973), as standing for the proposition
that an accused does not waive error by offering testimony to rebut or explain improperly
admitted testimony. 

 We review a decision on a motion to suppress under an abuse of discretion
standard. Laselle v. State, 923 S.W.2d 819, 823 (Tex. App.-Amarillo 1996, pet. ref'd). 
However, if the resolution of ultimate questions does not turn on an evaluation of credibility
and demeanor, appellate courts review mixed questions of law and fact de novo. Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Thus, in instances where the
determinative facts are undisputed, an appellate court reviews de novo whether a
statement was the product of improper custodial interrogation. Dowthitt v. State, 931
S.W.2d 244, 255 (Tex. Crim. App. 1996). 

 The term "custodial interrogation" cannot only include express questioning of a
suspect, but also any words or actions on the part of the police (other than those normally
attendant to arrest and custody) that the police should know are reasonably likely to elicit
an incriminating response. Jones v. State, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990)
(quoting Rhode Island v. Innis, 446 U.S. 291, 300-02, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d
297, 307-08 (1980)). In considering what police actions are "reasonably likely to elicit an
incriminating response," it is necessary to note that Miranda did not hold that all statements
obtained by police should be considered the product of interrogation. Rather, the Miranda
Court stated:

 Any statement given freely and voluntarily without any compelling
influences is, of course, admissible in evidence. The fundamental import of
the privilege while an individual is in custody is not whether he is allowed to
talk to the police without the benefit of warnings, but whether he can be
interrogated . . . .Volunteered statements of any kind are not barred by the
Fifth Amendment and their admissibility is not affected by our holding today.


Miranda, 384 U.S. at 478 (emphasis added). Statements made after arrest must not only
satisfy the Miranda doctrine, but must satisfy the Texas confession statute to be admissible
pursuant to Texas Rule of Evidence 801(e)(2). Edwards v. State, 813 S.W.2d 572, 577-78
(Tex. App.-Dallas 1991, pet. ref'd). In pertinent part, article 38.22 of the Code of Criminal
Procedure, the Texas confession statute, provides, "Nothing in this article precludes the
admission of a statement made by the accused . . . that does not stem from custodial
interrogation . . . ." Tex. Code Crim. Proc. Ann. art. 38.22 §5 (Vernon 1979).

 Reiterated, the relevant testimony in this case was that after appellant had been
arrested, he was detained and handcuffed. It was cold and appellant asked for his jacket. 
Officer Koontz, who heard the request, asked the investigator to take the black jacket and
ask if it was the one appellant was requesting. Thus, because of appellant's initial request
for a jacket, again heard by Koontz, his response when the officer brought the jacket to the
door, that the proffered jacket was his, was not the result of improper custodial
interrogation within the purview of Miranda. Neither was the response the result of an
improper action by the officers. Under all the surrounding circumstances, appellant's
admission that the black jacket was his was a volunteered admission that was admissible
into evidence. Appellant's second point is overruled.

 The thrust of appellant's third point is that because his arrest was illegal, the trial
court reversibly erred by not suppressing all statements made by appellant while he was
under arrest. In this case, at the time in question, the officers were executing a search
warrant that authorized the search of a house at 1516 E. 25th Street in Lubbock. It also
authorized the search of certain individuals named in the warrant, as well as "person or
persons unknown to affiant," without further identification of those unknown persons. The
State's evidence was that as the officers entered the house, they observed appellant in the
front room, and as they entered appellant ran to the back room. He was partially
undressed and was holding a cell phone. As Officer Koontz, the pursuing officer, caught
appellant, the officer said he was reaching toward a bed upon which a black jacket was
located. The officer said that he pursued appellant because a running person constitutes
a security risk to the police team. Appellant was handcuffed, detained and "frisked" for
weapons. Appellant and the other occupants of the house were taken outside and the
officers searched the house. As a result of the search, they found what appeared to be
crack cocaine in the house, as well as cocaine and a firearm located within the black
jacket. In addition, Officer Koontz averred that he had personal knowledge that appellant
had been at the house at various times prior to the search.

 When a search warrant is executed upon a residence, an occupant of the premises
may be detained for the duration of the search without a showing of probable cause. 
Michigan v. Summers, 452 U.S. 692, 704-05, 101 S.Ct. 2587, 2595-96, 69 L.Ed.2d 340
(1981); Lippert v. State, 664 S.W.2d 712, 722 (Tex. Crim. App. 1984). However, this
limited exception to the probable cause requirement does not extend to those merely on
the premises at the time of the execution of the search warrant. Lippert, 664 S.W.2d at
722. Even so, a police officer, in the absence of probable cause for an arrest and search,
may nevertheless validly stop a person and detain him briefly for questioning if he has a
reasonable suspicion that the person may be connected with criminal activity, based upon
specific and articulable facts and rational inferences from those facts. Daniels v. State,
718 S.W.2d 702, 704-05 (Tex. Crim. App.), cert. denied, 479 U.S. 885, 107 S.Ct. 277, 93
L.Ed.2d 252 (1986).

 In this case, appellant's presence on the premises, coupled with the surrounding
circumstances, were specific and articulable facts sufficient to give rise to a rational
inference that appellant was an occupant of the premises. Those facts were sufficient to
permit the officers to detain appellant briefly to ascertain whether he was in fact, an
occupant of the premises. See Summers, 452 U.S. at 693, 101 S.Ct. at 2589 (upon arrival
to execute a search warrant on residence, police encountered respondent descending the
front steps and detained him); Lippert, 664 S.W.2d at 720-21 (appellant who entered
house during the exercise of a search warrant was properly detained, even though
subsequent search of his person was illegal in absence of flight or other attempt to resist
detention). Appellant's flight from the entering officer was sufficient to constitute the
offense of evading detention. See Tex. Penal Code Ann. §38.04 (Vernon 2003). That
being so, the officers were entitled to arrest appellant for an offense committed in their
presence. See Mottley v. State, 841 S.W.2d 550, 551 (Tex. App.-Houston [1st Dist.] 1992,
no pet.).

 Additionally, at the time that appellant was detained, by the issuance of a search
warrant, a magistrate had determined there was probable cause that persons inside the
residence were involved in narcotics. Appellant was indisputably in the residence at the
time they arrived, he was partially undressed, and he ran when the officers entered. 
Appellant's presence on the premises in a state of partial undress and his flight from the
officers were specific and articulable facts that gave rise to a reasonable inference that
appellant was an occupant of the premises. Those facts are sufficient to permit a brief
detention of appellant to determine if he was, in fact, an occupant of the premises. Salazar
v. State, 893 S.W.2d 138, 140-142 (Tex. App.-Houston [1st Dist.] 1995, pet denied,
untimely filed). Bearing in mind that the admission of evidence is within the discretion of
the trial court and will not be reversed absent an abuse of discretion, Osbourn v. State, 92
S.W.3d 531, 537 (Tex. Crim. App. 2002), we conclude that under this record, the trial court
did not abuse its discretion in its ruling. Appellant's third point is overruled.

 In his fourth point, appellant contends the trial court abused its discretion by
receiving into evidence inadmissible hearsay testimony to the effect that appellant was
engaging in the illegal delivery of controlled substances. The sequence of events giving
rise to this point began when Officer Koontz was asked on cross-examination if he had
"some knowledge" as to who was living at 1516 E. 25th Street in Lubbock, the location that
was the subject of the search warrant. As relevant to this point, the officer replied, without
objection, that among others, Charles Mitchell and appellant "were all staying at the
residence off and on." Appellant did not object to the answer. On redirect examination,
and over a hearsay objection, when asked if Mitchell had made any statements to him
about who stayed at the residence, Officer Koontz was allowed to respond that appellant,
along with several others, "were all staying in the southeast bedroom and he knew they
had guns and they were selling crack." In supporting his argument that admitting the
testimony and the harm that resulted from the testimony requires reversal, appellant also
points to references by the State in its closing argument in the guilt/innocence phase to
Mitchell's alleged statement.

 In Fuentes v. State, 991 S.W.2d 267 (Tex. Crim. App. 1999), the court described 
Rule of Criminal Evidence 107 (the predecessor and progenitor of present Rule of
Evidence 107), as the Rule of Optional Completeness, and commented that it had been
recognized as addressing, or at least encompassing, the "opening the door" situation. Id.
at 279. In doing so, it quoted with approval a text comment that "the necessity of
completeness will justify the production, through the 'open door,' of extraneous offense
evidence, hearsay, or other matter that would otherwise be incompetent." Id. The present
rule is, in all material aspects, identical to that prior Rule of Criminal Evidence. Thus, the
State was entitled to inquire further about exactly what Mitchell might have told the officer,
and appellant's hearsay objection to the State's inquiry as to what Mitchell told the officer
about "who stayed at the residence" was not well taken. While the portion of the answer
as to appellant selling crack was nonresponsive and subject to objection, in the absence
of objection to that portion of the answer, appellant's right to complain was waived. See
Tex. R. App. P. 33.1.

 Moreover, even assuming arguendo the complaint was preserved for our review,
reversal is not required. As appellant recognizes, the admission of inadmissible hearsay
is non-constitutional error. Lee v. State, 21 S.W.3d 532, 538 (Tex.App.-Tyler 2000, no
pet.). Texas Rule of Appellate Procedure 44.2(b) provides that non-constitutional errors
that do not affect substantial rights must be disregarded. A substantial right is affected
when the error had a substantial and injurious effect or influence in determining the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v.
U.S., 328 U.S. 750, 766, 66 S.Ct. 1239, 1253, 90 L.Ed.1557 (1946)). A criminal conviction
should not be overturned because of non-constitutional error if, after examining the record
as a whole, the reviewing court has fair assurance that the error did not influence the jury,
or had but a slight effect on it. See Tex. R. App. P. 44.2(b); Johnson v. State, 967 S.W.2d
410, 417 (Tex. Crim. App. 1998). The error must not be viewed in isolation, but in relation
to the entire proceeding. Id. Without reiterating the extensive evidence in the case, suffice
it to say that we have considered the record en toto and find it sufficient to give fair
assurance that the error, if it was error, either did not affect the jury or, if it did, had but a
slight effect. Appellant's fourth point is overruled.

 Because of their close relationship, we will consider and discuss appellant's fifth and
sixth points together. In his fifth point, appellant posits that the trial court abused its
discretion in allowing police officers to testify, over objection, that the substance found at
the residence was cocaine because none of those witnesses possessed the requisite
"scientific or expert qualifications or training" to entitle them to state that conclusion. In his
sixth point, he complains that the trial court abused its discretion in admitting the testimony
of the expert testifying for the State because the State failed to establish the proper
predicate of reliability of the tests performed by the expert. Appellant is correct in arguing
that even an experienced police officer, without other training, is not competent to testify
as to the chemical composition of a substance because that is a matter for expert
testimony. See Bright v. State, 556 S.W.2d 317, 321-22 (Tex. Crim. App. 1977) (citing
Curtis v. State, 548 S.W.2d 57 (Tex. Crim. App. 1977)). The State responds to appellant's
fifth point by arguing that the lay testimony by the officers was harmless because of the
later expert testimony identifying the substance as cocaine. It responds to the sixth point
complaint by arguing it was not preserved for our review and, even if the question was
preserved, a proper predicate was laid for the admission of the testimony.

 Appellant's sixth point complaint is directed at the expert testimony identifying the
substances found in the black jacket and the house as cocaine. Under Texas Rule of
Evidence 702, the trial court must determine whether the proffered scientific evidence is
sufficiently reliable and relevant to help the jury in reaching accurate results. The burden
is upon the proponent of the evidence to prove by clear and convincing testimony that the
evidence meets that test. Kelly v. State, 824 S.W.2d 568, 572-73 (Tex. Crim. App. 1992).
We will not disturb a trial court's decision to admit expert testimony absent an abuse of its
discretion. Hinojosa v. State, 4 S.W.3d 240, 251 (Tex. Crim. App. 1999). To be
considered reliable, evidence based on a scientific theory must satisfy three criteria: 1) the
underlying scientific theory must be valid; 2) the technique applying the theory must be
valid; and 3) the technique must have been properly applied on the occasion in question. 
Id. at 250-251. That standard is not limited to novel scientific evidence, but applies to all
scientific evidence offered under Rule 702. Id.; see also Hurrelbrink v. State, 46 S.W.3d
350 (Tex. App.-Amarillo 2001, pet. ref'd). 

 In this case, Scott Williams testified that he had worked for the Texas Department
of Public Safety in the Crime Laboratory Division for a little over 14 years. His assigned
duty there was to receive and analyze evidence that was submitted by law enforcement
officers for drug analysis. He had a Bachelor of Science Degree in Chemistry and had
received training from the Department of Public Safety headquarters in Austin. He had
testified in court "many times," including previous testimony in the trial court on other
occasions. He averred that it was possible to identify an unknown substance looking at the
physical and chemical characteristics by conducting different types of tests and comparing
them to purchased references as well as published literature. He performs this type of
analysis frequently. He said he performed an analysis on the exhibit in question. He
weighed the substance and performed some spot or color tests in which a reagent is used
to look for color changes that tell what might be present in the substance being tested. He
then performed an infrared spectroscopy test that is a confirmation test. As a result of the
tests, he testified, he was able to conclusively identify the substances as cocaine. Under
this record, the trial court did not err in deeming the chemist's testimony sufficiently reliable
and receiving it into evidence. Because that expert testimony was admissible, any error
in allowing the police officers to testify as to the composition of the substances found was
harmless. See Hicks v. State, 545 S.W.2d 805, 809-10 (Tex. Crim. App. 1977). 

 In considering appellant's sixth point, we have not overlooked the State's contention
that by his failure to exercise his right to voir dire the expert witness prior to the time he was
testifying, appellant waived any right to complain. Texas Rule of Evidence 705(b) states
that in a criminal case, prior to the time the expert is allowed to give his opinion or disclose
the underlying facts, the defendant shall be allowed to conduct a voir dire examination
outside the presence of the jury, "directed to the underlying facts or data upon which the
opinion is based." However, as we read the rule, this is a privilege accorded a defendant
to give him an opportunity to ascertain if there is a basis for obtaining the exclusion of the
evidence without the possibility of adversely affecting the minds of the jury. However, the
fact that an appellant might choose not to exercise the privilege is not sufficient to forfeit
his right to object and claim error in the admission of the expert testimony at the time it is
received. Appellant's fifth and sixth points are overruled.

 In his seventh point, appellant contends that the trial evidence was legally
insufficient to support his conviction for possession of a controlled substance with intent
to deliver and the trial court erred by not granting his motion for instructed verdict. In
particular, appellant contends that although the evidence may be arguably sufficient to
support a conviction of possession of cocaine in an amount of not less than one nor more
than four grams of cocaine, it is legally insufficient to sustain his conviction as a party
possessing the aggregate amount of cocaine in the house for sale. 

 In evaluating the legal sufficiency of the evidence of guilt, we must view all of the
evidence in a light most favorable to the prosecution to determine whether any rational trier
of fact would have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979);
McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.), cert. denied, 522 U.S. 844, 118
S.Ct. 125, 139 L.Ed.2d 75 (1997). 

 Section 7.02 of the Penal Code provides that a person is criminally responsible for
an offense committed by the conduct of another if "acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the
other person to commit the offense." Tex. Penal Code Ann. § 7.02 (Vernon 2003). The
evidence is sufficient to convict under the law of parties where the defendant is physically
present at the commission of the offense and encourages the commission of the offense
by words or other agreement. In determining whether a defendant participated as a party,
a court may look to events occurring before, during, and after the commission of the
offense and may rely on actions of the defendant that show an understanding and common
design to do the prohibited act. Further, circumstantial evidence may be used to prove
party status. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (citing
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), cert. denied, 476 U.S.
1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). Although mere presence at the scene of
an offense is not alone sufficient to support a conviction, it is a circumstance tending to
prove guilt that may be combined with other facts to show appellant was a participant. 
Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). If it has some relevance
to the offense under prosecution, a jury may infer guilt from evidence of flight. Burks v.
State, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). Factors that, among other
circumstantial evidence have been considered by courts to show an intent to deliver are:
1) the nature of the place where the defendant was arrested; 2) the quantity of controlled
substance in the defendant's possession; 3) the manner of packaging; 4) the presence of
drug paraphernalia; 5) the defendant's possession of large amounts of cash; and 6) the
defendant's status as a drug user. Williams v. State, 902 S.W.2d 505, 507 (Tex. App.-
Houston [1st Dist.] 1994, no pet.). 

 In this case, there was evidence that appellant was partially dressed at the time the
officers entered, he fled from the presence of the entering officer to a room where he
reached for a black jacket on a bed in the room which was later discovered to contain 2.72
grams of cocaine and a handgun; a digital scale was found under the mattress of the bed; 
crack cocaine weighing 47.4 grams was found in the jacket pocket of another individual in
the house; and the cocaine found in different areas of the residence was packaged in a
similar manner and was colored the same, which was an indication that they all came from
the same batch. Officer Koontz, an experienced narcotics officer, testified that the cocaine
was packaged in a manner "consistent with the distribution of crack cocaine." He also
averred that crack cocaine "is generally distributed by a group of folks, with each individual
within that group having a separate role" and it appeared that the four men located in the
house were working together in the distribution of crack cocaine. Additionally, there was
evidence that for a 17 year old, appellant was in possession of a substantial amount of
cash. Moreover, there was the evidence that while the house was being searched,
appellant and another of the occupants were overheard saying that they knew the person
that "had set them up" and they were going to get that individual when they got out of jail.
There was also testimony by Lubbock Detective Dwayne Gerber, one of the officers
conducting the search, that Antwan Davis, one of the occupants found in the house, said
the police could stop looking because they had "found everything we had" and appellant
shook his head "like 'yeah.'" Suffice it to say that viewed in the light by which we must view
it, the evidence was legally sufficient to sustain appellant's conviction as a party. 
Appellant's seventh point is overruled.

 In his eighth point, appellant asserts the evidence was factually insufficient to
sustain his conviction. In conducting a factual sufficiency review, we must view all the
evidence in the record without the prism of "in the light most favorable to the prosecution." 
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In conducting our review,
we must be mindful that the jury is the sole judge of the weight and credibility of the witness
testimony. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We may only
set aside the jury verdict when it is so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 135.

 In addition to the State's evidence which we have outlined above, appellant
presented three witnesses besides himself. Tommy Anderson testified that appellant had
worked for him and that he paid him $200 on December 2, 2001. He also admitted that
he had been convicted of two thefts and burglary of a habitation. Appellant's mother,
Carolyn Foster, also testified that she occasionally bought her son clothes, he owned three
jackets, one of which was a Bulls jacket, which was received into evidence, and she gave
him $60 shortly before the occasion in question. Appellant's aunt, Cheryl Butler, averred
that she had given appellant $50 to take to the mall shortly before he was arrested.

 Appellant testified that he had gone over to the house in question about 15 to 20
minutes before the police arrived. He and the others had stopped there to fix a car before
they went on to the mall. Appellant went into the house to change clothes when his cell
phone rang. He looked at the caller I.D. and saw that it was his friend Quinton's girlfriend
calling. He had his pants down because he was going to change clothes before going to
the mall to purchase some clothes. He was leaving the bedroom to take the phone to
Quinton, and "that's when they came in." He said when he saw the officers, he put the
phone on the floor in front of him and got down on the floor. The money he had in his
pocket was the result of his work and the gifts from his mother and aunt. He denied he ran
from the officer coming towards him or that he reached for the black jacket, which was a
different size from the one he owned. He denied that he had been wearing the black jacket
and stated he was wearing the Bulls jacket that night. Although he first admitted the black
jacket was his, he immediately denied ownership when he saw it better. Appellant also
denied that he possessed any firearms or illegal drugs. He denied that he had any
conversations with the other men while the police were searching the house, and averred
the officers were lying when they said he indicated any agreement with Antwan Davis's
remark that the officers had found all the contraband. The officers also lied when they said
he was involved in a conversation about "getting" someone when they got out of jail.

 Although the evidence as to appellant's involvement in the offense was
contradictory, it was well within the jury's province to determine the credibility and weight
to be given the contradictory evidence. After reviewing the evidence as a whole, we cannot
say the jury verdict was so against the great weight and preponderance of the evidence
as to be clearly wrong and unjust. Appellant's eighth point is overruled.

 In his ninth point, appellant asserts the trial court abused its discretion by admitting
evidence at the sentencing hearing about appellant's alleged gang membership. Citing
Fuller v. State, 829 S.W.2d 191 (Tex. Crim. App. 1992), the State responds that, although
appellant did object to any gang testimony prior to the commencement of the punishment
hearing and was granted a running objection, that was not sufficient to preserve the
question because appellant did not move to strike the testimony when the State rested. 
The State is correct. In the Fuller case, the court noted that Fuller's objection to gang
testimony "ultimately proved meritorious." However, it went on to explain that it was
"constrained by rules of procedure to hold that Appellant forfeited the right of appellate
review by his failure to move that it [the gang testimony] be stricken after the close of the
State's evidence." Id. at 198. In explaining the rule, the court commented:

 The rule may seem harsh to some, but it is a fundamental feature of our
adjudicatory system. Simply put, a trial judge cannot err in most cases by
overruling a relevancy objection so long as the challenged evidence might
be "connected up" before the end of the trial. In the instant case, the trial
court's ruling was correct when made and only became challengeable when
a connection by the close of the case had not been made. And it is not the
judge's duty to notice whether the evidence is eventually "connected up" in
fact. Instead, the objecting party must reurge his relevancy complaint after
all the proof is in, ask that the offending evidence be stricken, and request
that the jury be instructed to disregard it. Otherwise, his objection will be
deemed forfeited on appeal. [citations omitted].


Id. at 198-99. Appellant also objected that the prejudicial effect of the evidence would
exceed its probative value. However, the record does not bear that objection out and the
trial court did not abuse its discretion in overruling that portion of the objection. The
rationale explicated by the Fuller court is also applicable here. We must, therefore,
overrule appellant's ninth and final point.

 In sum, all of appellant's points are overruled and the judgment of the trial court is
affirmed.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).