# NO. 12-10-00288-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JASON DEWAYNE LIVELY,* *APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jason DeWayne Lively appeals his convictions for two counts of intoxication manslaughter and two counts of intoxication assault. In two issues, Appellant argues that the trial court should have granted his motion for a mistrial and that he received ineffective assistance of counsel. We affirm.

### BACKGROUND

Appellant was the driver of a vehicle that collided violently with a pickup truck on what is called Roller Coaster Road in Anderson County, Texas. The stretch of roadway is so named because it has hills and dips that allow a roller-coaster-like sensation for travelers. Appellant was intoxicated and driving fast when he came upon a Ford pickup truck that was making a turn. Appellant lost control of his vehicle, and the two vehicles collided. The two people in the pickup truck were badly injured in the wreck, as was Appellant. Two of the passengers in Appellant's vehicle were killed.

An Anderson County grand jury returned an indictment alleging that Appellant committed the offenses of intoxication manslaughter, two occurrences, and intoxication assault, two occurrences. On the day the jury was to be selected, at least one of the family members of the

individuals killed in the wreck positioned herself at the entrance to the courtroom and attempted to show pictures to members of the jury venire as they entered the courtroom. When Sheryl Williams, a member of the district attorney's staff, became aware that this was occurring, she made the person or persons stop showing pictures and escorted them to the district attorney's office.

Appellant moved for a mistrial on the basis that the jury pool had been compromised. The trial court heard testimony from Sheryl Williams and from both of Appellant's attorneys. Williams testified that she saw the mother of one of the victims holding an eight by ten picture "up to her." When Williams saw her, the woman had the "back of the picture out." One of Appellant's attorneys represented to the court that he saw a "gentleman in overalls" "holding that picture out and pointing at the picture as the people walked by." He added that he did not "know how many people had actually seen that." Appellant's other attorney testified that he saw "basically what [the other attorney] testified to."

The trial court took Appellant's motion for mistrial under advisement. The court invited Appellant's counsel to make a suggestion about a statement that could be made to the entire venire about the incident. Counsel declined on the basis that such an action would serve to reinforce the issue. As part of the juror qualification process, juror number 134 said that she did not see anyone holding up photographs or pictures as she entered the courtroom. After the district attorney made a motion for a jury shuffle, the trial court asked the venire members if "when they came and showed up for jury service today, [they] saw anybody holding up any photographs or any pictures." Three members of the venire raised their hands and were individually questioned. Juror number 16 said that he saw some pictures, but that he could not "tell what it was." He said it "looked like a car wreck or something." It is not clear from his statement whether he saw photographs held by a member of the victim's family or photographs at counsel table. Juror number 69 responded in the affirmative when asked if she saw a "photograph that was up here at the table." Juror number 71 said he saw photographs at "the counsel table." He said the photographs he saw depicted what looked like a "smashed up car." He said "No," when asked if he saw "any [photographs] in the back with any other people."

The case then proceeded to trial. Appellant pleaded guilty to the four charges, and the jury assessed punishment at imprisonment for twenty years on each of the manslaughter counts and for ten years on each of the assault counts. The trial court ordered the sentences to be served

concurrently, and this appeal followed.

## JURY CONTAMINATION

In his first issue, Appellant argues that the prospective jurors were exposed to accident scene photographs, that the exposure tainted the integrity of the jury process, and that the trial court should have granted a mistrial.

**Standard of Review and Applicable Law**

We review the denial of a motion for mistrial under the standard of abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). A trial court does not abuse its discretion if its decision is within a zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). Furthermore, mistrial is appropriate only for "highly prejudicial and incurable errors." *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

When potentially prejudicial statements are made by a potential juror in front of the entire panel, the court of criminal appeals has held that the decision to grant a mistrial, or the review of that decision on appeal, turns on the question of harm to the appellant, which can be evaluated using the following factors: (1) whether the other members of the panel heard the remark, (2) whether the potential jurors who heard the remark were influenced to the prejudice of the appellant, and (3) whether the juror in question or some other juror who may have had a similar opinion was forced upon the appellant. *See Callins v. State*, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986) (citing *Johnson v. State*, 205 S.W.2d 773, 774 (1947)).

In the context of harmful pretrial publicity, Texas law provides that a change of venue may be granted if there exists in the county where the prosecution is commenced so great a prejudice against the defendant that he cannot obtain a fair and impartial trial or where there is a dangerous combination against the defendant instigated by influential persons, by reason of which he cannot expect a fair trial. *See* TEX. CODE CRIM. PROC. ANN. art. 31.03(a) (Vernon 2006).

**Analysis**

The family members of the victim in this case should not have tried to show photographs to the potential jurors. It is a fundamental part of our system of justice that a jury verdict be rendered on the basis of the evidence admitted at trial, and only on the basis of the evidence admitted at trial. *See*, *e.g.*, *Chambers v. Florida*, 309 U.S. 227, 236-37, 60 S. Ct. 472, 477, 84 L. Ed. 716 (1940)

("From the popular hatred and abhorrence of illegal confinement, torture and extortion of confessions of violations of the 'law of the land' evolved the fundamental idea that no man's life, liberty or property be forfeited as criminal punishment for violation of that law until there had been a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power."); *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991). For this reason, defendants are, where necessary to protect their rights, given new trials if pretrial publicity has pervaded the community,[1] if jurors conduct independent experiments[2] or investigations,[3] or if a person communicates with a juror.[4]

Exposure of potential jurors to information not admitted at trial is analogous to situations where information is volunteered during the voir dire process or to pervasive pretrial publicity because both of these kinds of problems involve extraneous information being provided to potential jurors before jury selection. After evaluating the showing of the photographs in the way the law treats these other kinds of problems, we hold that Appellant has not shown that the trial court abused its discretion by overruling his motion for mistrial. The evidence before the trial court when it ruled is consistent with the conclusion that few if any of the venire members saw any photographs and that those members who did see something did not serve on the petit jury.[5] *See Callins*, 780 S.W.2d at 188. Appellant has not shown that a juror who served saw any photographs, or that he was prejudiced if a juror did see a photograph. *See* TEX. CODE CRIM. PROC. ANN. art. 31.03(a).

Appellant argues that the evidence that few jurors saw the photographs is not what it appears. Instead, he posits that the jurors did see the photographs, but had a "secreted agenda" and "fail[ed] to disclose true responses" to the court's inquiry. The evidence before the trial court does not support this contention. The statements made to the trial court by Appellant's attorneys and Sheryl Williams offered only a fragmentary rendition of what occurred. None of those witnesses were actually able to say that a juror saw a photograph, and the trial court's implicit

---

[1] *See, e.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 1522–23, 16 L. Ed. 2d 600 (1966).

[2] *See, e.g.*, *Carter v. State*, 753 S.W.2d 432, 438 (Tex. App.–Corpus Christi 1988, pet. ref'd).

[3] *See, e.g.*, *Shivers v. State*, 756 S.W.2d 442, 444 (Tex. App.–Houston [1st Dist.] 1988, no pet.).

[4] TEX. CODE CRIM. PROC. ANN. art. 36.22 (Vernon 2006).

[5] The three jurors who saw photographs did not serve on the jury.

conclusion that the venire members were being truthful about their viewing of the photographs is supported by the record.

After reviewing all of the evidence, we hold that the trial court's ruling on the motion for mistrial was not an abuse of discretion. We overrule Appellant's first issue.

### EFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant argues that he did not receive effective assistance of counsel.

### Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires an appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Counsel's representation is not reviewed for isolated or incidental deviations from professional norms, but on the basis of the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

The second step requires the appellant to show prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must show that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We begin with the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). As part of this presumption, we presume counsel's actions and decisions were reasonable and were motivated by sound trial strategy. *See id*. Appellant has the burden of proving ineffective assistance of counsel. *See id*.

The *Strickland* test applies to an analysis of counsel's representation during the sentencing or punishment phase of a trial. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (overruling precedent holding that *Strickland* did not apply to sentencing hearings).

### Analysis

Appellant argues that his counsel's performance was deficient for the reasons we have

organized as follows:

(1) "Nothing that trial counsel did in this case served the purpose of testing the prosecution's case, or putting up any effective opposition to it."
(2) Counsel failed to present "any evidence to support effective mitigation."
(3) Counsel's "cross-examination [of witnesses] was minimal, if any at all."
(4) Counsel made legal arguments that "although not all facially detrimental to his client, were meritless, in that they in no way tested or stood in opposition to the prosecution's case."
(5) Counsel "falsely [led] the jury to think that significant mitigation [evidence] would be presented."
(6) Counsel "failed to object to evidence that should not have [been] tendered to the jury such as the medical record of the witnesses, without supporting expert testimony, thus being extraneous in its nature."
(7) Counsel's closing argument was deficient and was a "virtual concession."
(8) Counsel elicited "a recent and similar extraneous offense and a concession of guilt."
(9) Counsel allowed "his client to enter a plea of guilty without apparently having properly reviewed the documents in the stipulation package and having discussed them fully with his client, requiring his plea to be later withdrawn."
(10) Counsel promised during voir dire that mitigation evidence would be presented but "failed to call any witnesses actually able to give evidence concerning any real comprehensive portrayal as to the background, character, moral culpability, or state of mind as to Appellant's actions and life subsequent to the accident."
(11) Counsel "presented a painfully brief opening statement in which [he] failed to outline the course of mitigation presentation [sic]."
(12) Counsel conducted "[v]ery limited examination of witness concerning wholly irrelevant issues."
(13) Counsel referred to "witnesses not called and to matters not in evidence" during final summation.
(14) Counsel presented "ineffective sentencing witnesses."

Subissues one and four are conclusory statements about counsel's performance. The law provides that the right to counsel is not meaningfully honored if there is a breakdown in the representation such that "counsel fails to subject the prosecution's case to meaningful adversarial testing." *See Bell v. Cone*, 535 U.S. 685, 696, 22 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002). Appellant argues that the *Cone* opinion represents a shift from the traditional *Strickland* analysis of the performance of counsel and urges this court to adopt what he terms a different test. We do not agree that *Cone* represents a change in the analysis of adequacy of counsel questions. The court in *Cone* cited a footnote from *United States v. Cronic*, 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 2047 n.25, 80 L. Ed. 2d 657 (1984), in which the Court noted that it had not hesitated to dispense with the prejudice prong of the *Strickland* analysis "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cone*, 535 U.S. at 696 n.3, 22 S. Ct. at 1851 n.3. But the court did not create a new test. In fact, the court in *Cone* addressed complaints like the other subissues herein–presentation of mitigating evidence and closing argument–and identified those as "plainly of the same ilk" as the complaints to be evaluated pursuant to *Strickland*. *Id*., 535 U.S. at 697-98, 22 S. Ct. at 1851-52. The court

in *Cronic* allowed that the prejudice prong of the *Strickland* analysis could be dispensed with in cases where there was no counsel or its equivalent. *See Cronic*, 466 U.S. at 659, 104 S. Ct. at 2047. Subissues one and four are simply assertions that trial counsel was functionally absent, but fail, by themselves, to show that Appellant was without counsel.

Subissues two, five, ten, eleven, and fourteen address mitigation evidence. Appellant argues that counsel told the venire during voir dire that there would be mitigation evidence, failed to outline mitigation evidence in his opening statement, and failed to present any mitigation evidence. This argument highlights one of the regular problems with review of the adequacy of counsel on direct appeal. *See*, *e.g.*, *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional."). No motion for new trial was filed in this case, and so we cannot know the reasons for counsel's actions, nor can we ascertain, from the record or from any other source, what kind of evidence or witnesses might have been available.

Generally, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. *See*, *e.g.*, *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. Appellant did not cite to the record in support of his argument that counsel told the jury venire that there would be specific mitigation evidence. We have reviewed the record and found only the most general statements about the nature of the case, not specific promises of information. Appellant has failed to show that counsel did not conduct a reasonable investigation, and he has failed to show what kind of mitigation evidence was available, if any, and not employed in this case. Counsel did call witnesses, including Appellant. Without a showing as to what the missing mitigation evidence or witnesses would be, we cannot conclude that counsel was ineffective for failing to uncover or present them. *See Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) ("[F]ailure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.").

In subissues three, seven, twelve, and thirteen, Appellant makes general arguments as to the quality of counsel's performance at trial. Specifically, he argues that cross examination was minimal, closing argument was deficient, direct examination was limited, and that counsel referred

to witnesses not called and matters not in evidence during closing argument. Appellant's record citation in support of his argument that counsel referred to matters not before the jury is not to the pages in the record that contain closing argument, and counsel did not make such references. As to the other subissues, these are matters of strategy.

Appellant has not shown that counsel should have taken a different course, or explained what that course might have been. This was a very difficult case to defend. Appellant had seriously injured two people and killed two others. Counsel called three witnesses and cross examined six of the State's witnesses. Counsel elected not to ask questions of the chaplain who notified the families that their children had been killed. He also did not cross examine a witness who testified as to the timeline of the evening, and he did not cross examine the sister of one of the injured people. The decision not to cross examine a witness can be a reasonable exercise of professional judgment. *See*, *e.g.*, **Coble v. State**, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973) ("Often, the decision to not cross-examine a witness is the result of wisdom acquired by experience in the combat of trial.").

Likewise, counsel may reasonably decide to make a brief closing argument or to conduct a brief direct examination of a witness. Our review of an appellant's claim of ineffective assistance of counsel is highly deferential to trial counsel and avoids the deleterious effects of hindsight. *See* **Ingham v. State**, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Appellant has not shown that counsel's strategic decisions as to examination of witnesses or closing arguments were unreasonable. Accordingly, we cannot conclude that counsel's performance in direct examination, cross examination, or final summation was deficient.

In his sixth subissue, Appellant argues that counsel should have objected to the admission of the medical records of the witnesses. He argues that because the records were not supported by expert testimony, they were "extraneous in nature." Appellant cites three cases that address extraneous bad acts and argues that counsel should have objected to the medical records because they were "extraneous in nature."

As a threshold to showing that counsel should have raised an objection, an appellant must show that the trial court would have committed error in overruling such an objection. *See* **Ex parte Martinez**, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). The medical records are not representative of extraneous bad acts. In fact, the records are evidence of offenses to which Appellant pleaded guilty, and there is no reasonable suggestion that the State could not have had

them admitted if counsel had not agreed to let them be admitted without objection. Accordingly, Appellant has not shown that the trial court would have erred in sustaining an objection to the medical records either because there was not an expert to sponsor them or because they represented an extraneous offense.

Finally, in his eighth and ninth subissues, Appellant argues that counsel elicited a concession of guilt from him, allowed him to plead guilty without having reviewed the documents, and elicited evidence or testimony about a "recent and similar extraneous offense." It is not clear to which recent and similar extraneous offense Appellant is referring because he does not cite to the record in support of this contention. He did admit, on cross examination, that he had purchased alcoholic beverages for underage people in the past and that he had kept driving despite getting tickets for not having insurance. Given the nature of the offenses involved in this case, it would be a reasonable strategy to allow a defendant to testify even though this kind of information could be elicited.

As to the claim that Appellant pleaded guilty without reviewing documents, there is no evidence to support this, and Appellant does not cite to the record in support of his contention. Appellant pleaded guilty before the jury was selected, and then he pleaded guilty once the trial began. The pleas appear to be proper and in order, and we were unable to locate any difficulty Appellant had with documents as they relate to the plea.

After considering all of the evidence, we hold that the record does not show that Appellant received ineffective assistance of counsel. As we stated earlier, this was a difficult case to defend. Two young people were dead. Two young people were seriously injured. Counsel had to handle this case with a delicate hand. He proved that Appellant was eligible for probation. He presented Appellant's testimony and the testimony of two other witnesses. He solicited an agreement with the State that the State would not seek to cumulate the sentences for the intoxication assault charges. In spite of counsel's efforts, the jury gave Appellant the maximum sentence on each count. This does not demonstrate ineffective assistance of counsel, and Appellant has failed to meet his burden to show that counsel's representation was substandard or that he suffered any prejudice from counsel's representation. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered July 29, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)