NO.
12-10-00288-CR

                        

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

JASON
DEWAYNE LIVELY,                          §                 APPEAL FROM THE THIRD

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                        §                 ANDERSON
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

Jason
DeWayne Lively appeals his convictions for two counts of intoxication
manslaughter and two counts of intoxication assault.  In two issues, Appellant
argues that the trial court should have granted his motion for a mistrial and
that he received ineffective assistance of counsel.  We affirm.

 

Background

Appellant
was the driver of a vehicle that collided violently with a pickup truck on what
is called Roller Coaster Road in Anderson County, Texas.  The stretch of
roadway is so named because it has hills and dips that allow a
roller-coaster-like sensation for travelers.  Appellant was intoxicated and
driving fast when he came upon a Ford pickup truck that was making a turn. 
Appellant lost control of his vehicle, and the two vehicles collided.  The two
people in the pickup truck were badly injured in the wreck, as was Appellant. 
Two of the passengers in Appellant’s vehicle were killed.  

An
Anderson County grand jury returned an indictment alleging that Appellant
committed the offenses of intoxication manslaughter, two occurrences, and
intoxication assault, two occurrences.  On the day the jury was to be selected,
at least one of the family members of the individuals killed in the wreck
positioned herself at the entrance to the courtroom and attempted to show
pictures to members of the jury venire as they entered the courtroom.  When
Sheryl Williams, a member of the district attorney’s staff, became aware that
this was occurring, she made the person or persons stop showing pictures and
escorted them to the district attorney’s office.  

Appellant
moved for a mistrial on the basis that the jury pool had been compromised.  The
trial court heard testimony from Sheryl Williams and from both of Appellant’s
attorneys.  Williams testified that she saw the mother of one of the victims
holding an eight by ten picture “up to her.”  When Williams saw her, the woman
had the “back of the picture out.”  One of Appellant’s attorneys represented to
the court that he saw a “gentleman in overalls” “holding that picture out and
pointing at the picture as the people walked by.”  He added that he did not
“know how many people had actually seen that.”  Appellant’s other attorney
testified that he saw “basically what [the other attorney] testified to.”  

The
trial court took Appellant’s motion for mistrial under advisement.  The court invited
Appellant’s counsel to make a suggestion about a statement that could be made
to the entire venire about the incident.  Counsel declined on the basis that
such an action would serve to reinforce the issue.  As part of the juror
qualification process, juror number 134 said that she did not see anyone
holding up photographs or pictures as she entered the courtroom.  After the
district attorney made a motion for a jury shuffle, the trial court asked the
venire members if “when they came and showed up for jury service today, [they]
saw anybody holding up any photographs or any pictures.”  Three members of the
venire raised their hands and were individually questioned.  Juror number 16
said that he saw some pictures, but that he could not “tell what it was.”  He
said it “looked like a car wreck or something.”  It is not clear from his
statement whether he saw photographs held by a member of the victim’s family or
photographs at counsel table.  Juror number 69 responded in the affirmative
when asked if she saw a “photograph that was up here at the table.”  Juror
number 71 said he saw photographs at “the counsel table.”  He said the
photographs he saw depicted what looked like a “smashed up car.”  He said “No,”
when asked if he saw “any [photographs] in the back with any other people.”  

The
case then proceeded to trial.  Appellant pleaded guilty to the four charges,
and the jury assessed punishment at imprisonment for twenty years on each of
the manslaughter counts and for ten years on each of the assault counts.  The
trial court ordered the sentences to be served concurrently, and this appeal
followed.

 

Jury Contamination

            In
his first issue, Appellant argues that the prospective jurors were exposed to
accident scene photographs, that the exposure tainted the integrity of the jury
process, and that the trial court should have granted a mistrial.

Standard
of Review and Applicable Law

We
review the denial of a motion for mistrial under the standard of abuse of
discretion. Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim.
App. 2003).  A trial court does not abuse its discretion if its decision is
within a zone of reasonable disagreement.  See Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1991).  Furthermore, mistrial is
appropriate only for “highly prejudicial and incurable errors.”  See Wood
v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

When
potentially prejudicial statements are made by a potential juror in front of
the entire panel, the court of criminal appeals has held that the decision to
grant a mistrial, or the review of that decision on appeal, turns on the question
of harm to the appellant, which can be evaluated using the following factors: 
(1) whether the other members of the panel heard the remark, (2) whether the
potential jurors who heard the remark were influenced to the prejudice of the
appellant, and (3) whether the juror in question or some other juror who may
have had a similar opinion was forced upon the appellant.  See Callins v.
State, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986) (citing Johnson
v. State, 205 S.W.2d 773, 774 (1947)).  

In
the context of harmful pretrial publicity, Texas law provides that a change of
venue may be granted if there exists in the county where the prosecution is
commenced so great a prejudice against the defendant that he cannot obtain a
fair and impartial trial or where there is a dangerous combination against the
defendant instigated by influential persons, by reason of which he cannot
expect a fair trial.  See Tex.
Code Crim. Proc. Ann. art. 31.03(a) (Vernon 2006).

Analysis

The
family members of the victim in this case should not have tried to show
photographs to the potential jurors.  It is a fundamental part of our system of
justice that a jury verdict be rendered on the basis of the evidence admitted
at trial, and only on the basis of the evidence admitted at trial.  See,
e.g., Chambers v. Florida, 309 U.S. 227, 236-37, 60 S. Ct.
472, 477, 84 L. Ed. 716 (1940) (“From the popular hatred and abhorrence of
illegal confinement, torture and extortion of confessions of violations of the
‘law of the land’ evolved the fundamental idea that no man’s life, liberty or
property be forfeited as criminal punishment for violation of that law until
there had been a charge fairly made and fairly tried in a public tribunal free
of prejudice, passion, excitement, and tyrannical power.”); Robinson v.
State, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991).  For this reason,
defendants are, where necessary to protect their rights, given new trials if
pretrial publicity has pervaded the community,[1] if jurors conduct independent
experiments[2] or investigations,[3] or if a person communicates with
a juror.[4]


Exposure
of potential jurors to information not admitted at trial is analogous to
situations where information is volunteered during the voir dire process or to
pervasive pretrial publicity because both of these kinds of problems involve
extraneous information being provided to potential jurors before jury
selection.  After evaluating the showing of the photographs in the way the law
treats these other kinds of problems, we hold that Appellant has not shown that
the trial court abused its discretion by overruling his motion for mistrial. 
The evidence before the trial court when it ruled is consistent with the
conclusion that few if any of the venire members saw any photographs and that
those members who did see something did not serve on the petit jury.[5]
 See Callins,
780 S.W.2d at 188.   Appellant has not shown that a juror who served saw any
photographs, or that he was prejudiced if a juror did see a photograph.  See
Tex. Code Crim. Proc. Ann. art.
31.03(a).

Appellant
argues that the evidence that few jurors saw the photographs is not what it
appears.  Instead, he posits that the jurors did see the photographs, but had a
“secreted agenda” and “fail[ed] to disclose true responses” to the court’s
inquiry.  The evidence before the trial court does not support this
contention.  The statements made to the trial court by Appellant’s attorneys
and Sheryl Williams offered only a fragmentary rendition of what occurred. 
None of those witnesses were actually able to say that a juror saw a
photograph, and the trial court’s implicit conclusion that the venire members
were being truthful about their viewing of the photographs is supported by the
record.

After
reviewing all of the evidence, we hold that the trial court’s ruling on the
motion for mistrial was not an abuse of discretion.  We overrule Appellant’s
first issue.

 

Effective Assistance of Counsel

            In
his second issue, Appellant argues that he did not receive effective assistance
of counsel.

Applicable
Law

Claims
of ineffective assistance of counsel are evaluated under the two step analysis
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct.
2052, 80 L. Ed. 674 (1984).  The first step requires an appellant to
demonstrate that trial counsel’s representation fell below an objective
standard of reasonableness under prevailing professional norms.  See Strickland,
466 U.S. at 688, 104 S. Ct. at 2065; McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996).  Counsel’s representation is not
reviewed for isolated or incidental deviations from professional norms, but on
the basis of the totality of the representation.  See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.

The
second step requires the appellant to show prejudice from the deficient
performance of his attorney.  See Hernandez v. State, 988 S.W.2d
770, 772 (Tex. Crim. App. 1999).  To establish prejudice, an appellant must
show that there is a reasonable probability that the result of the proceeding
would have been different but for counsel’s deficient performance.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068.  

We
begin with the strong presumption that counsel’s conduct falls within the wide
range of reasonable professional assistance.  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  As part of this presumption, we
presume counsel’s actions and decisions were reasonable and were motivated by
sound trial strategy.  See id.  Appellant has the burden of
proving ineffective assistance of counsel.  See id.  

The
Strickland test applies to an analysis of counsel’s
representation during the sentencing or punishment phase of a trial.  See Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (overruling
precedent holding that Strickland did not apply to sentencing
hearings).  

Analysis

            Appellant
argues that his counsel’s performance was deficient for the reasons we have
organized as follows:

 

(1)    
“Nothing that trial counsel did in
this case served the purpose of testing the prosecution’s case, or putting up
any effective opposition to it.”

(2)    
Counsel failed to present “any
evidence to support effective mitigation.”

(3)    
Counsel’s “cross-examination [of
witnesses] was minimal, if any at all.”

(4)    
Counsel made legal arguments that
“although not all facially detrimental to his client, were meritless, in that
they in no way tested or stood in opposition to the prosecution’s case.”

(5)    
Counsel “falsely [led] the jury to
think that significant mitigation [evidence] would be presented.”

(6)    
Counsel “failed to object to
evidence that should not have [been] tendered to the jury such as the medical
record of the witnesses, without supporting expert testimony, thus being
extraneous in its nature.”

(7)    
Counsel’s closing argument was
deficient and was a “virtual concession.”

(8)    
Counsel elicited “a recent and
similar extraneous offense and a concession of guilt.”

(9)    
Counsel allowed “his client to
enter a plea of guilty without apparently having properly reviewed the
documents in the stipulation package and having discussed them fully with his
client, requiring his plea to be later withdrawn.”

(10)
Counsel promised during voir dire
that mitigation evidence would be presented but “failed to call any witnesses
actually able to give evidence concerning any real comprehensive portrayal as
to the background, character, moral culpability, or state of mind as to
Appellant’s actions and life subsequent to the accident.”

(11) Counsel “presented a painfully brief opening statement in which [he]
failed to outline the course of mitigation presentation [sic].”

(12) Counsel conducted “[v]ery limited examination of witness concerning
wholly irrelevant issues.”

(13) Counsel referred to “witnesses not called and to matters not in
evidence” during final summation.

(14) Counsel presented “ineffective sentencing witnesses.”

 

Subissues
one and four are conclusory statements about counsel’s performance.  The law
provides that the right to counsel is not meaningfully honored if there is a
breakdown in the representation such that “counsel fails to subject the prosecution’s
case to meaningful adversarial testing.”  See Bell v. Cone, 535
U.S. 685, 696, 22 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002).  Appellant
argues that the Cone opinion represents a shift from the
traditional Strickland analysis of the performance of counsel and
urges this court to adopt what he terms a different test.  We do not agree that
Cone represents a change in the analysis of adequacy of counsel
questions.  The court in Cone cited a footnote from United
States v. Cronic, 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 2047 n.25,
80 L. Ed. 2d 657 (1984), in which the Court noted that it had not hesitated to
dispense with the prejudice prong of the Strickland analysis
“when counsel was either totally absent, or prevented from assisting the
accused during a critical stage of the proceeding.”  Cone, 535
U.S. at 696 n.3, 22 S. Ct. at 1851 n.3.  But the court did not create a new
test.  In fact, the court in Cone addressed complaints like the
other subissues herein–presentation of mitigating evidence and closing
argument–and identified those as “plainly of the same ilk” as the complaints to
be evaluated pursuant to Strickland.  Id., 535 U.S.
at 697-98, 22 S. Ct. at 1851-52.  The court in Cronic allowed
that the prejudice prong of the Strickland analysis could be
dispensed with in cases where there was no counsel or its equivalent.  See Cronic,
466 U.S. at 659, 104 S. Ct. at 2047.  Subissues one and four are simply
assertions that trial counsel was functionally absent, but fail, by themselves,
to show that Appellant was without counsel.  

Subissues
two, five, ten, eleven, and fourteen address mitigation evidence.  Appellant
argues that counsel told the venire during voir dire that there would be
mitigation evidence, failed to outline mitigation evidence in his opening
statement, and failed to present any mitigation evidence.  This argument
highlights one of the regular problems with review of the adequacy of counsel
on direct appeal.  See, e.g., Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002) (“Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decision making as to
overcome the presumption that counsel’s conduct was reasonable and professional.”). 
No motion for new trial was filed in this case, and so we cannot know the
reasons for counsel’s actions, nor can we ascertain, from the record or from
any other source, what kind of evidence or witnesses might have been
available.  

Generally,
counsel has a duty to make reasonable investigation or to make a reasonable
decision that makes particular investigations unnecessary.  See, e.g.,
Strickland, 466 U.S. at 691, 104 S. Ct. at 2066.  Appellant did
not cite to the record in support of his argument that counsel told the jury
venire that there would be specific mitigation evidence.  We have reviewed the
record and found only the most general statements about the nature of the case,
not specific promises of information.  Appellant has failed to show that
counsel did not conduct a reasonable investigation, and he has failed to show
what kind of mitigation evidence was available, if any, and not employed in
this case.  Counsel did call witnesses, including Appellant.  Without a showing
as to what the missing mitigation evidence or witnesses would be, we cannot
conclude that counsel was ineffective for failing to uncover or present them.  See
Perez v. State, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010)
(“[F]ailure to call witnesses at the guilt-innocence and punishment stages is
irrelevant absent a showing that such witnesses were available and appellant
would benefit from their testimony.”).

In
subissues three, seven, twelve, and thirteen, Appellant makes general arguments
as to the quality of counsel’s performance at trial.  Specifically, he argues
that cross examination was minimal, closing argument was deficient, direct
examination was limited, and that counsel referred to witnesses not called and
matters not in evidence during closing argument.  Appellant’s record citation
in support of his argument that counsel referred to matters not before the jury
is not to the pages in the record that contain closing argument, and counsel
did not make such references.  As to the other subissues, these are matters of
strategy.  

Appellant
has not shown that counsel should have taken a different course, or explained
what that course might have been.  This was a very difficult case to defend. 
Appellant had seriously injured two people and killed two others.  Counsel
called three witnesses and cross examined six of the State’s witnesses. 
Counsel elected not to ask questions of the chaplain who notified the families
that their children had been killed.  He also did not cross examine a witness
who testified as to the timeline of the evening, and he did not cross examine
the sister of one of the injured people.  The decision not to cross examine a
witness can be a reasonable exercise of professional judgment.  See, e.g.,
Coble v. State, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973)
(“Often, the decision to not cross-examine a witness is the result of wisdom
acquired by experience in the combat of trial.”).  

Likewise,
counsel may reasonably decide to make a brief closing argument or to conduct a
brief direct examination of a witness.  Our review of an appellant’s claim of
ineffective assistance of counsel is highly deferential to trial counsel and
avoids the deleterious effects of hindsight.  See Ingham v. State,
679 S.W.2d 503, 509 (Tex. Crim. App. 1984).  Appellant has not shown that
counsel’s strategic decisions as to examination of witnesses or closing
arguments were unreasonable.  Accordingly, we cannot conclude that counsel’s
performance in direct examination, cross examination, or final summation was
deficient.

In
his sixth subissue, Appellant argues that counsel should have objected to the
admission of the medical records of the witnesses.  He argues that because the
records were not supported by expert testimony, they were “extraneous in
nature.”  Appellant cites three cases that address extraneous bad acts and
argues that counsel should have objected to the medical records because they
were “extraneous in nature.”  

As
a threshold to showing that counsel should have raised an objection, an
appellant must show that the trial court would have committed error in
overruling such an objection. See Ex parte Martinez, 330 S.W.3d
891, 901 (Tex. Crim. App. 2011).  The medical records are not representative of
extraneous bad acts.  In fact, the records are evidence of offenses to which
Appellant pleaded guilty, and there is no reasonable suggestion that the State
could not have had them admitted if counsel had not agreed to let them be
admitted without objection.  Accordingly, Appellant has not shown that the
trial court would have erred in sustaining an objection to the medical records
either because there was not an expert to sponsor them or because they
represented an extraneous offense.

Finally,
in his eighth and ninth subissues, Appellant argues that counsel elicited a
concession of guilt from him, allowed him to plead guilty without having
reviewed the documents, and elicited evidence or testimony about a “recent and
similar extraneous offense.”  It is not clear to which recent and similar
extraneous offense Appellant is referring because he does not cite to the
record in support of this contention.  He did admit, on cross examination, that
he had purchased alcoholic beverages for underage people in the past and that he
had kept driving despite getting tickets for not having insurance.  Given the
nature of the offenses involved in this case, it would be a reasonable strategy
to allow a defendant to testify even though this kind of information could be
elicited.

As
to the claim that Appellant pleaded guilty without reviewing documents, there
is no evidence to support this, and Appellant does not cite to the record in
support of his contention.  Appellant pleaded guilty before the jury was
selected, and then he pleaded guilty once the trial began.  The pleas appear to
be proper and in order, and we were unable to locate any difficulty Appellant
had with documents as they relate to the plea.  

After
considering all of the evidence, we hold that the record does not show that Appellant
received ineffective assistance of counsel.  As we stated earlier, this was a
difficult case to defend.  Two young people were dead.  Two young people were
seriously injured.  Counsel had to handle this case with a delicate hand.  He
proved that Appellant was eligible for probation.  He presented Appellant’s
testimony and the testimony of two other witnesses.  He solicited an agreement
with the State that the State would not seek to cumulate the sentences for the
intoxication assault charges.  In spite of counsel’s efforts, the jury gave
Appellant the maximum sentence on each count.  This does not demonstrate
ineffective assistance of counsel, and Appellant has failed to meet his burden
to show that counsel’s representation was substandard or that he suffered any
prejudice from counsel’s representation.  We overrule Appellant’s second issue.

 

Disposition

            Having
overruled Appellant’s first and second issues, we affirm the
judgment of the trial court.

                                           Sam Griffith

                                                                                                      
Justice

 

 

 

 

Opinion
delivered July 29, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)




 
 
 
 
 
 
  
 
 
 
 
  
 






 









[1]
See, e.g., Sheppard v. Maxwell, 384 U.S. 333, 363, 86
S. Ct. 1507, 1522–23, 16 L. Ed. 2d 600 (1966).

 





[2]
See, e.g., Carter v. State, 753 S.W.2d 432,
438 (Tex. App.–Corpus Christi 1988, pet. ref'd).

 





[3]
See, e.g., Shivers v. State, 756 S.W.2d 442, 444
(Tex. App.–Houston [1st Dist.] 1988, no pet.).

 





[4]
Tex. Code Crim. Proc. Ann. art.
36.22 (Vernon 2006).

 





[5]
The three jurors who saw photographs did not serve on the jury.